**John M. VRUNO, Appellant,**

v.

**Ruth D. SCHWARZWALDER, Individually and as Commissioner, Harry H. Gaston, Individually and as Commissioner, Civil Service Commission, City of St. Paul and Thomas Gleason, Individually and as Director of Personnel, City of St. Paul and Steve Conroy, Individually and as Fire Chief, City of St. Paul and Richard H. Rowan, Individually and as Police Chief, City of St. Paul, Appellees.**

No. 78–1621.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1979.

Decided May 24, 1979.

Rehearing and Rehearing En Banc Denied July 11, 1979.

Mark A. Bohnhorst of Southern Minnesota Regional Legal Services, Inc., St. Paul, Minn. (argued), and Andrew Haines, Minneapolis, Minn., on brief, for appellant.

Terry Sullivan, Asst. City Atty., St. Paul, Minn. (argued), and Suzanne Flinsch, City Atty., St. Paul, Minn., on brief, for appellees.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

GIBSON, Chief Judge.

John Vruno appeals from the District Court's [1] order dismissing with prejudice all the claims asserted in his complaint except his pendent state law claim based upon Minn.Stat.Ann. Ch. 364, which claim the District Court dismissed without prejudice. Aside from the state law claim, Vruno's complaint alleged that appellees violated 42 U.S.C. § 1983 because by removing his name from the list of eligible candidates for employment in the classified civil service position of firefighter for the City of St. Paul they deprived him of due process and equal protection of the law as guaranteed by the fourteenth amendment. Federal jurisdiction rests on 28 U.S.C.A. § 1343.

Appellees, on March 28, 1977, filed a motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. After some proceedings irrelevant to this appeal, the District Court notified the parties that it would treat the motion as a motion for summary judgment, gave the parties an opportunity to file additional materials, and held a hearing on the motion. On July 26, 1978, the District Court issued its memorandum and order. Since it found that Vruno's designated equal protection claim related solely to alleged deprivations of due process, the court only addressed the issue of whether Vruno was entitled to due process and concluded that Vruno had not alleged interference with an independent federally protected right nor asserted a deprivation of an interest in liberty or property protected by the fourteenth amendment. Appellant filed a timely appeal. We affirm.

John Vruno is a 28-year-old white male. On December 8, 1969, at age 18, he was arrested for the crime of burglary. He pled guilty and the court stayed imposition of sentence. After successfully completing two years' probation, he was restored to full citizenship on June 8, 1972, and by operation of Minnesota law the conviction became one for a misdemeanor.

In May 1974, Vruno applied for the position of firefighter for the City of St. Paul by completing a civil service application wherein he noted his conviction for burglary but that the conviction had subsequently been reduced to a misdemeanor upon completion of probation. He also indicated that he had been arrested on one occasion for speeding. On July 16, 1974, Vruno took the combined written and physical examination for the position of firefighter and passed the written examination with a score which placed him seventeenth on the eligible list of 300 candidates. Vruno then underwent medical and psychiatric examinations and was considered to have passed them.[2] Pursuant to the civil service rules of the City of St. Paul, the Civil Service office investigated Vruno's character and verified his references. Subsequently, on September 2, 1975, they notified him that his name had been removed from the eligible list because of "unsatisfactory references." The civil service rules provide that an applicant cannot be removed from the eligible list because of insufficient or unsatisfactory references or personal qualifications except upon the recommendation of the advisory reference committee established by the rules; therefore, in order to find out the cause for his removal and to defend against it, Vruno requested a meeting with the reference committee. A meeting was scheduled for September 12, 1975. The reference committee did not give a written statement of the reasons for Vruno's removal from the

---

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation with the Eighth Circuit.

1. The Honorable Paul Benson, Chief Judge, District of North Dakota, sitting by designation in the District of Minnesota.

2. Vruno did not take the required cardiogram because appellees had removed his name from the list of eligible candidates before he had the opportunity to take the test. Appellees do not rely upon any health reasons to justify removing Vruno from the eligible list.

eligible list, but orally informed him that his removal was based upon his criminal conviction for burglary and alleged tardiness and unauthorized absences during prior employment. The District Court found that at the meeting Vruno adequately refuted these reasons for his removal, but subsequent to the meeting the reference committee notified him that it had reaffirmed its recommendation that he be removed from the list of eligible candidates.

Vruno then requested another meeting with the reference committee, which was scheduled for September 26, 1975. At this meeting the committee orally informed him of additional reasons for his removal from the eligible list, specifically that he had "intentionally falsified" his civil service application by failing to disclose all of his arrests for traffic violations and that his high school attendance record was poor. During the meeting Vruno explained that he had not "intentionally falsified" the application but had merely misinterpreted the term "arrests for traffic violations" in that he thought it referred only to situations when he had been taken into custody.[3] After this meeting, the committee again notified him that it had reaffirmed its recommendation.

By letter dated September 30, 1975, Vruno, through his attorney, requested a hearing before a neutral, unbiased tribunal, and specifically requested adherence to the requirements of Minn.Stat.Ann. Ch. 364. The St. Paul Civil Service Commission denied this request and affirmed the reference committee's action at a meeting on October 6, 1975. It is disputed whether Vruno had notice of this meeting. Vruno then filed his complaint in this action on November 6, 1975.

On appeal, Vruno raises only one argument. He contends that the State of Minnesota, by enacting Minn.Stat.Ann. Ch. 364, has created a liberty or property interest protected by the due process clause of the fourteenth amendment and 42 U.S.C. § 1983. He claims that by ignoring the provisions of this statute, appellees have deprived him of a constitutionally protected liberty or property interest.

In Minn.Stat.Ann. Ch. 364, "[t]he legislature declares that it is the policy of the state of Minnesota to encourage and contribute to the rehabilitation of criminal offenders and to assist them in the resumption of the responsibilities of citizenship." Minn.Stat.Ann. § 364.01. The statute then sets forth definite standards and procedures to be followed when criminal offenders seek public employment or occupation licenses.[4] Chapter 364 concludes by stating that: "Vi-

3. Vruno had eight arrests for traffic offenses but had only been taken into custody once on these arrests.

4. Minn.Stat.Ann. Ch. 364 provides in relevant part:

  364.03 Relation of conviction to employment or occupation

  Subdivision 1. Notwithstanding any other provision of law to the contrary, no person shall be disqualified from public employment, nor shall a person be disqualified from pursuing, practicing, or engaging in any occupation for which a license is required solely or in part because of a prior conviction of a crime or crimes, unless the crime or crimes for which convicted directly relate to the position of employment sought or the occupation for which the license is sought.

  Subd. 2. In determining if a conviction directly relates to the position of public employment sought or the occupation for which the license is sought, the hiring or licensing authority shall consider:

(a) The nature and seriousness of the crime or crimes for which the individual was convicted;

(b) The relationship of the crime or crimes to the purposes of regulating the position of public employment sought or the occupation for which the license is sought;

(c) The relationship of the crime or crimes to the ability, capacity, and fitness required to perform the duties and discharge the responsibilities of the position of employment or occupation.

  Subd. 3. A person who has been convicted of a crime or crimes which directly relate to the public employment sought or to the occupation for which a license is sought shall not be disqualified from the employment or occupation if the person can show competent evidence of sufficient rehabilitation and present fitness to perform the duties of the public employment sought or the occupation for which the license is sought. Sufficient evidence of rehabilitation may be established by the production of:

olation of the rights established in sections 364.01 to 364.10 shall constitute a violation of a person's civil rights." Minn.Stat.Ann. § 364.10.

■ Preliminarily, appellees challenge appellant Vruno's right to raise this argument on appeal.[5] They contend "that Appellant has raised his argument that Chapter 364 created a property interest or a liberty interest, for the first time, on this appeal and therefore pursuant to law, this court cannot consider this issue." An examination of the record below, however, reveals that Vruno's attorney in both written and oral arguments to the court below raised the issue that Chapter 364 created a civil right that deserved the protection of procedural due process.

■ In *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33

(a) A copy of the local, state, or federal release order; and

(b) Evidence showing that at least one year has elapsed since release from any local, state, or federal correctional institution without subsequent conviction of a crime; and evidence showing compliance with all terms and conditions of probation or parole; or

(c) A copy of the relevant department of corrections discharge order or other documents showing completion of probation or parole supervision.

In addition to the documentary evidence presented, the licensing or hiring authority shall consider any evidence presented by the applicant regarding:

(1) The nature and seriousness of the crime or crimes for which convicted;

(2) All circumstances relative to the crime or crimes, including mitigating circumstances or social conditions surrounding the commission of the crime or crimes;

(3) The age of the person at the time the crime or crimes were committed;

(4) The length of time elapsed since the crime or crimes were committed; and

(5) All other competent evidence of rehabilitation and present fitness presented, including, but not limited to, letters of reference by persons who have been in contact with the applicant since his or her release from any local, state, or federal correctional institution.

\* \* \* \* \* \*

364.05  Notification upon denial of employment or disqualification from occupation

If a hiring or licensing authority denies an individual a position of public employment or disqualifies the individual from pursuing, practicing, or engaging in any occupation for which a license is required, solely or in part because of the individual's prior conviction of a crime, the hiring or licensing authority shall notify the individual in writing of the following:

(1) The grounds and reasons for the denial or disqualification;

(2) The applicable complaint and grievance procedure as set forth in section 364.06;

(3) The earliest date the person may reapply for a position of public employment or a license; and

(4) That all competent evidence of rehabilitation presented will be considered upon reapplication.

364.06  Violations, procedure

Any complaints or grievances concerning violations of sections 364.01 to 364.10 shall be processed and adjudicated in accordance with the procedures set forth in chapter 15, the administrative procedure act.

364.07  Application

The provisions of sections 364.01 to 364.10 shall prevail over any other laws, rules, and regulations which purport to govern the granting, denial, renewal, suspension, or revocation of a license or the initiation, suspension, or termination of public employment on the grounds of conviction of a crime or crimes.  In deciding to grant, deny, revoke, suspend, or renew a license, or to deny, suspend, or terminate public employment for a lack of good moral character or the like, the hiring or licensing authority may consider evidence of conviction of a crime or crimes but only in the same manner and to the same effect as provided for in sections 364.01 to 364.10.  Nothing in sections 364.01 to 364.10 shall be construed to otherwise affect relevant proceedings involving the granting, denial, renewal, suspension, or revocation of a license or the initiation, suspension, or termination of public employment.

5. Appellees also argue that this case is moot because of the way appellant has formulated his argument on appeal.  Appellees contend that "when Appellant failed to appeal from all provisions of the order, rather than simply claiming a creation of a liberty or property interest by Chapter 364, the reasons of rejection other than Appellant's criminal background became sufficient grounds in themselves for rejection of Appellant."  This somewhat strained argument for mootness lacks merit because Chapter 364 applies even if the criminal conviction is only a part of the reason for the removal, and the District Court by dismissing the Chapter 364 claim without prejudice carefully left open the possibility of relief for any violation of the state law.

L.Ed.2d 548 (1972), and its companion case, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court promulgated the two-tier framework that it currently employs to analyze procedural due process claims. The first stage of analysis requires a determination of whether the person seeking relief has been deprived of a liberty or property interest protected by the fourteenth amendment.[6] If the court concludes that the due process clause applies to the particular interest at stake, it proceeds to the second stage, which is the identification of the procedures necessary to safeguard that interest. In the instant case, we need consider only whether the interest asserted is a liberty or property interest[7] within the meaning of the due process clause.

In judging whether a protected liberty or property interest exists, the Supreme Court has frequently focused upon state law. *In Board of Regents of State Colleges v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, the Court expressed the importance of state law thusly:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

The Court also stated in *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), that an "analysis as to liberty parallels the accepted due process analysis as to property * * *. We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State." *See also Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 845, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Bishop v. Wood,* 426 U.S. 341, 344–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Goss v. Lopez,* 419 U.S. 565, 572–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Accordingly, we must ascertain what interest is created by Minn.Stat.Ann. Ch. 364 and evaluate the nature of the interest to determine if it is within the fourteenth amendment's protection of liberty and property.

Appellant argues that Chapter 364 confers upon him a right to be considered for civil service employment in accordance with certain procedural safeguards as delineated by the statute. There can be no question but that the Minnesota legislature intended Chapter 364 to confer upon criminal offenders certain rights and it denominated these rights "civil rights." The criminal offender

---

**6.** Actually this first stage involves the resolution of two issues, one legal and one factual. The factual issue is whether the plaintiff has actually suffered a deprivation of the asserted interest. Although generally we would refrain from reaching a constitutional issue if the case might be disposed of on a non-constitutional ground, the posture of this case squarely presents the constitutional question. Since the District Court decided this case on the basis of a summary judgment motion, we must view the factual allegations in the light most favorable to the non-moving party. 6 Moore, Federal Practice ¶ 56.11[2] at 56–210. Therefore, for the purpose of this appeal, we accept as factually accurate that the City of St. Paul did not comply with Minn.Stat.Ann. Ch. 364 in removing appellant's name from the eligibility list for firefighter positions.

**7.** The distinction between liberty and property interests is not always clear, *see Lynch v. Household Finance Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); Monaghan, *Of "Liberty" and "Property,"* 62 Cornell L.Rev. 405, 434 n. 188 (1977), and certain state actions may infringe upon both types of interests, *see, e.g., Goss v. Lopez,* 419 U.S. 565, 574–75, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Vruno has formulated his arguments to present both theories, but it appears that he primarily follows an extension of the principles articulated in Charles Reich's seminal article, *The New Property,* 73 Yale L.J. 733 (1964), and argues a concept of legitimate expectation to certain procedures in the nature of an entitlement.

is granted the right to be free from disqualification from public employment on the basis of his criminal conviction unless the crime directly related to the position of employment sought. The statute provides certain procedures and standards and seeks to eliminate any discretion concerning the consideration of a criminal conviction in the process of making public employment decisions.

Although this case presents some difficulty in terms of separating a property or liberty interest from the procedures designed to safeguard that interest, we find that the problem in this particular case is more semantic than real.[8] Appellant's argument directly parallels Professor Van Alstyne's analysis of the property interest of David Roth in *Board of Regents of State Colleges v. Roth, supra;* Van Alstyne, *Cracks in "The New Property": Adjudicative Due Process in the Administrative State,* 62 Cornell L.Rev. 445, 459–60 (1977). In *Roth,* the Board of Regents denied renewal of the teaching contract of David Roth. Because he did not have tenure according to the state statute the Supreme Court found that he had not been deprived of a property interest protected by the due process clause. Professor Van Alstyne, however, theorizes that a procedural assurance of the receipt of notice of non-renewal a certain number of weeks prior to the expiration of the teaching appointment, that was granted by the state statute to non-tenured teachers, could have been considered a substantive property interest requiring the protection of due process. Since Roth received this notice, the Supreme Court did not consider this question, but the majority's analysis indicates that the Court would not have accepted this argument. 408 U.S. at 567, 92 S.Ct. 2701; *see also* 62 Cornell L.Rev. at 460. Practically, Chapter 364 grants an entitlement only to certain procedures and the use of certain standards. It does not entitle the criminal offender to public employment if he or she meets certain criteria, just as the Wisconsin statute in *Roth* did not entitle non-tenured teachers to renewal of their contracts. Chapter 364 does not provide an underlying entitlement to a liberty or property interest, and appellant has not indicated any other source for a constitutionally protected interest. The chapter does provide a procedure and guidelines for the state and local officials to observe, involving avenues for administrative and judicial review, but it does not establish a federal constitutional right nor a universal right falling within the ambit of constitutionally protected rights.

■ As stated by the First Circuit in *Slotnick v. Staviskey,* 560 F.2d 31, 34 (1st Cir. 1977):

The simple fact that state law prescribes certain procedures does not mean that

---

8. To a certain extent, this case reflects an aspect of the current framework for analysis of due process claims that has led many commentators to criticize the framework. *See* Glennon, *Constitutional Liberty and Property: Federal Common Law and § 1983,* 51 S.Cal.L.Rev. 355 (1978); Monaghan, *Of "Liberty" and "Property,"* 62 Cornell L.Rev. 405 (1977); Note, *"Liberty," "Property," and Procedural Due Process,* 56 Oregon L.Rev. 137 (1977); Note, *Protecting State Procedural Rights in Federal Court: A New Role for Substantive Due Process,* 30 Stan.L.Rev. 1019 (1978); L. H. Tribe, *American Constitutional Law,* 501–59 (1978); Tushnet, *The Newer Property: Suggestion for the Revival of Substantive Due Process,* 1975 Sup.Ct.Rev. 261; Van Alstyne, *Cracks in "The New Property": Adjudicative Due Process in the Administrative State,* 62 Cornell L.Rev. 445 (1977). In defining a property or liberty interest, it is sometimes difficult to distinguish the entitlement to a property interest or the right to a liberty interest from the procedures and standards created to confer or withdraw the interest. *See* e. g., *Arnett v. Kennedy,* 416 U.S. 134, 152–54, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Board of Regents of State Colleges v. Roth, supra* 408 U.S. at 567, 92 S.Ct. 2701. On one hand this problem threatens to undermine the fundamental purpose of the due process clause, to prevent arbitrary governmental action, by obviating the need to proceed to the second stage of analysis and formulate constitutionally required, as opposed to statutorily required, procedures to control governmental deprivation of liberty or property interests. On the other hand, this definitional difficulty has led to some theories that extend the conception of entitlements protected by due process to the point of upsetting the appropriate balance of federal and state judicial relations.

the procedures thereby acquire a federal constitutional dimension. *See Screws v. United States*, 325 U.S. 91, 108, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (opinion of Douglas, J.); *Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir. 1974). *Cf. Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

560 F.2d at 34 (footnote omitted). *See also Sigler v. Lowrie*, 404 F.2d 659, 662 (8th Cir. 1969).

*Inmates of Nebraska Penal and Correctional Complex v. Greenholtz*, 576 F.2d 1274 (8th Cir.), *cert. granted*, 439 U.S. 817, 99 S.Ct. 76, 58 L.Ed.2d 107 (1978), presented this court with a facially similar claim. In *Greenholtz*, the inmates asserted a present right to be considered for parole in accordance with certain procedural safeguards and argued that this interest was entitled to due process protection. The court held that "because this right involves the prisoners' liberty interest, the inmates' right to consideration for parole is an aspect of liberty to which the protection of the due process clause extends." 576 F.2d at 1281. The court found that the interest at stake fundamentally related to "conditional liberty versus incarceration." 576 F.2d at 1278. The nature of this liberty interest is clearly within the contemplation of the fourteenth amendment as imprisonment is the quintessential deprivation of liberty. Appellant's interests in the procedural safeguard established by Minn.Stat.Ann. Ch. 364 is not comparable.

■ Chapter 364 does not relate to an underlying liberty interest protected by the fourteenth amendment. Although the statute may be viewed as creating a right to be free from the stigma of a criminal conviction when applying for public employment, the Supreme Court has indicated that this interest is not of the nature protected by the fourteenth amendment.[9] Every state statutory procedure protects against arbitrary action and could, therefore, be considered to create a right to be free from arbitrary action, but the Supreme Court has not yet recognized this as a substantive aspect of liberty protected by the fourteenth amendment. Van Alstyne, *supra* at 487–90; L. H. Tribe, American Constitutional Law 538–39 (1978). Nor does Chapter 364 grant appellant a property interest in the position of firefighter in the City of St. Paul. He does not have an entitlement subject to forfeiture if he is found to be unfit for one of the reasons listed in the statute. The statute addresses only one aspect of public employment decisions, and exclusively disclaims any effect on other aspects of the proceeding. Thus the statute does not create even a conditional entitlement to the public employment desired by appellant, and he does not indicate any other state law that would guarantee him the entitlement.

■ The due process clause does not convert every state statutory right into a constitutional entitlement; it has not been construed to constitutionalize all state law. *Bishop v. Wood, supra*, 426 U.S. at 349 n. 13, 349–50, 96 S.Ct. 2074; *Paul v. Davis, supra*, 424 U.S. at 698–700, 96 S.Ct. 1155. As noted by Mr. Justice Douglas's plurality opinion in *Screws v. United States*, 325 U.S. 91, 108, 65 S.Ct. 1031, 1039: "Violation of local law does not necessarily mean that federal rights have been invaded."

Chapter 364 represents a commendable effort on the part of Minnesota to remove archaic, historical barriers to the rehabilitation of criminal offenders. This effort reflects the type of social experimentation reserved to the states by the Constitution.[10]

---

9. Vruno was merely removed from the eligibility list for firefighter positions. This action did not impose upon him any stigma unrelated to the criminal conviction but left him free to seek other employment. *See Board of Regents of State Colleges v. Roth, supra* 408 U.S. at 574–75, 92 S.Ct. 2701.

10. As stated by Mr. Justice Brandeis in his oft-quoted dissent in *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S.Ct. 371, 387, 76 L.Ed. 747 (1932): "It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country."

The due process clause does not require the existence of a federal forum to redress all violations of state statutory procedures, and federal intervention with the state procedural scheme established by Chapter 364 would be inappropriate. As observed by Mr. Justice Stevens, speaking for the majority in *Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2080:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. * * * The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

The state here has provided a procedure for criminal offenders to utilize in casting aside the onus of a criminal conviction. Minnesota enacted Chapter 364 for the benefit of appellant and others falling within the statute's classifications, and specifically provided administrative and judicial review for complaints or grievances concerning violations of the procedure. If an administrative body is charged with failing to adhere to the procedure guaranteed by Chapter 364, the statute provides for judicial review of the agency's decision in the state courts. Minn.Stat.Ann. §§ 364.06 and 15.0424. This is the appropriate avenue for relief. The pendent state claim was dismissed without prejudice.

Judgment of the District Court affirmed.