**Akmed KHALIFA, individually and d.b.a. Lampco, Appellant,**

v.

**STATE of Minnesota, et al., Respondents.**

**No. C8–86–938.**

Court of Appeals of Minnesota.

Dec. 9, 1986.

384

J. Dennis O'Brien, Kurt J. Erickson, LeFevere, Lefler, Kennedy, O'Brien & Drawz, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Andrea Mitau Kircher, J. Michael Miles, Sp. Asst. Attys. Gen., St. Paul, for respondents.

Heard, considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Akmed Khalifa appeals the trial court's dismissal of seven causes of action alleged against respondents after Khalifa failed to receive the State's 1982 light bulb contract. Khalifa claims that the contract was initially set aside under the Small Business Procurement Act, Minn.Stat. § 16.083 (1980) and then removed from that program for impermissible racial motives that violate the Minnesota Human Rights Act (MHRA) and 42 U.S.C. § 1983. We affirm in part, reverse in part, and remand.

## FACTS

In 1975 the Minnesota Legislature adopted the Small Business Procurement Act (Act). The Act directs the Minnesota Department of Administration (DOA) to set aside a certain percentage of State contracts to be awarded, where possible, to small businesses owned and operated by "socially or economically disadvantaged persons." Minn.Stat. § 16.083, subd. 4 (1980). Socially or economically disadvantaged persons are defined as

person[s] who [have] been deprived of the opportunity to develop and maintain a competitive position in the economy because of social or economic conditions. This disadvantage may arise from cultural, social or economic circumstances, or background * * * [and] includes racial minorities, women, or persons who have suffered a substantial physical disability.

Minn.Stat. § 645.445, subd. 5 (1980).

This set-aside program is intended to help ensure that businesses owned and operated by disadvantaged individuals receive a fair share of State business. The increased economic opportunities made available to those businesses are intended to promote their growth and viability in Minnesota.

In November 1981 Akmed Khalifa was informed by the State small business coordinator that the State's 1982 light bulb contract was designated a set-aside contract and that Khalifa was the only qualified bidder. Khalifa, a black male, owns Lampco, a wholesale distributor of Westinghouse light products. The coordinator instructed Khalifa to come to the DOA office for a pre-bid conference. Khalifa appeared for the conference, met with the coordinator and the DOA buyer responsible for State light bulb purchases, and was instructed on how to submit his bid. The coordinator informed the buyer that the contract, which had an estimated value of $1.2 million, had been set aside. Relying on this representation, Khalifa began to prepare his bid, incurring $6,300 in expenses.

In 1981 Voss Electric Company, Inc. (Voss), a Nebraska corporation, held the State's light bulb contract. Voss intended to bid for the 1982 contract. Khalifa alleges that after learning that the 1982 contract had been set aside, Voss, through its attorney and 30 to 40 other nonminority vendors, made telephone calls to DOA to ask why the contract had been set aside for "minorities."

After the series of telephone calls, James Hiniker, Jr., then DOA Commissioner, decided that the contract should not be bid through the set-aside program, but should instead be awarded through competitive bidding. Hiniker claimed that his decision was not racially motivated but based on a belief that because there was only one vendor eligible to bid on the contract, removal was necessary to ensure the State would receive a fair price. It is also alleged that the DOA also has an internal policy, not promulgated as a rule, that requires contracts of $1 million or more to be let through competitive bidding.

Khalifa submitted a bid on the contract under the competitive bidding process. Voss was the lowest bidder and was awarded the 1982 contract. Khalifa was the second lowest bidder.

Khalifa filed a charge of discrimination against respondents with the Minnesota Department of Human Rights (MDHR). After an investigatory hearing, the MDHR found probable cause to credit Khalifa's allegation of unfair discriminatory practice by DOA. Khalifa then filed a complaint against respondents, alleging racial discrimination under the Minnesota Human Rights Act, a violation of his civil rights under 42 U.S.C. § 1983, and fraud.

Before answering or discovery by either party, respondents filed a motion to dismiss for failure to state a claim upon which relief can be granted under Minn.R.Civ.P. 12.02(5). In deciding the motion, the trial court considered, on some of the issues, additional affidavits submitted by the parties. *See* Minn.R.Civ.P. 12.02 (motion to dismiss converted to motion for summary judgment if court considers matters out-side the pleadings). The trial court stated that each of the claims was without merit and that respondents were entitled to judgment as a matter of law. Apart from this determination, the trial court stated no basis for how it reached this conclusion in any of the seven causes of action.

## ISSUES

1. Has Khalifa provided sufficient facts to support a cause of action for racial discrimination under the Minnesota Human Rights Act?

2. Does Khalifa have a cause of action for violation of his civil rights under 42 U.S.C. § 1983?

3. Is respondent Hiniker immune from liability under 42 U.S.C. § 1983?

4. Has Khalifa presented sufficient facts to support an action for common law fraud?

## ANALYSIS

### I

#### *Minnesota Human Rights Act*

The Minnesota Human Rights Act provides that it is an unfair discriminatory practice "to discriminate against any person in the access to, admission to, full utilization of, or benefit from any public service because of race * * *." Minn.Stat. § 363.03, subd. 4 (1980). Khalifa claims that he was denied access to and utilization of benefits due to the withdrawal of the set-aside contract. The State argues that the actions of the DOA do not constitute racial discrimination under the Act because Khalifa was not treated differently from others similarly situated. The significant question for purposes of the Act, however, is whether the DOA's actions were impermissibly racially motivated.

■ In discrimination cases brought under the MHRA, a complainant must present a prima facie case of discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207

(1981). This requires complainant to show a discriminatory motive. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986). However, direct evidence of a discriminatory motive is not always available. In such circumstances the Supreme Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), formulated an alternative means by which discriminatory motives can be indirectly inferred. Although the formulation must be modified for varying factual patterns and employment contexts, these inferences can constitute the proof necessary for a prima facie case. *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 442 (Minn.1983).

 Khalifa has shown that (1) he is a member of a protected group; (2) he sought and qualified for the contract under the set-aside program; (3) he was denied the opportunity for a contract under the set-aside program; and (4) the contract was then given to a nonmember of a protected class under competitive bidding procedures. We believe this satisfies the requirement, under the applicable cases for establishing a prima facie case. Khalifa's allegation that the withdrawal of the contract after 30–40 telephone calls by nonminority contractors would provide sufficient evidence for a prima facie case of impermissible racial motivation. However, even without that direct evidence, the *McDonnell Douglas* formulation would achieve the same result.

Under the *McDonnell Douglas* analysis, elements 1–4 would create a presumption in favor of Khalifa that the State unlawfully discriminated against him. The State must then present evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The employer's burden is light, but must be presented with sufficient clarity so that pretext, if it exists, can be demonstrated. *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95.

In this case the State explains the action of removing the contract from the set-aside program as a precaution—that letting a contract to a single bidder carries an unreasonable risk of error in estimating the contract's true market value. The third step of the *McDonnell Douglas* analysis allows the complainant to rebut this reason by showing that it is actually a pretext for discrimination. *Sigurdson*, 386 N.W.2d at 720.

On this issue Khalifa presented evidence that the Commissioner's action, while not outside his authority, was a departure from the standard DOA operating procedure that the coordinator designate set-aside contracts. Khalifa presented, through affidavits, the MDHR investigatory results which found probable cause to credit his allegation of discriminatory motive.

There is also evidence that the State's reasons for removing the contract are not supported by agency practice or rule. Specifically, the rules promulgated by DOA governing the establishment of set-aside procurements contain a mechanism to protect the State's interest in receiving a reasonable bargain for its money. Where two or more disadvantaged individuals are eligible, the price is determined through competitive bidding. 2 MCAR § 1.6704B.5, recodified as Minn.R. 1230.1800, subp. 2(E). Where only one business is eligible, that business is invited to bid based on estimated price for the contract previously set by the division of procurements. 2 MCAR § 1.6704B.1 and 4, recodified as Minn.R. 1230.1800, subp. 2(A) and (D). The contract in question is a standard requirement price contract for a year-long supply of light bulbs at an agreed-upon price per unit. The procurement division's ability to set an estimated price for the contract adequately protects against the risk of an unfair price.

We are satisfied that Khalifa has presented sufficient evidence to withstand a summary judgment motion. The trial judge provided us with no basis on which to believe the case was deficient. The State's claim, that Khalifa was treated in the same manner as similarly situated individuals, misses the point. Impermissible discrimination can occur in the administration of

programs designed to assist disadvantaged individuals; they are not mutually exclusive.

Because the trial court considered affidavits in addition to the pleadings on this issue, we treat it as a motion for summary judgment. The disputed material issue is whether an impermissible discriminatory motive caused the contract to be removed from the set-aside program. The disputed facts are for resolution at trial.

Khalifa also alleges, in his second cause of action, that any DOA internal policy of not awarding contracts worth $1 million or more through set-aside circumvents the procedure of the statute and unfairly restricts the opportunities for small businesses to develop and grow. Khalifa claims that the Commissioner is required to make an individual evaluation of whether a small business scheduled to receive an award is able to perform the contract. Minn.Stat. § 16.083, subd. 3 (1980). Khalifa claims that the proper time to make this determination under the statute is after the set-aside procedures are followed and the contract is awarded to a responsible bidder. The Commissioner can then decide whether the size of the contract exceeds the small business' ability to perform it. Khalifa claims the present unpromulgated policy has a racially discriminatory effect and impact.

■ This is essentially a claim based on disparate impact theory, i.e., that a practice which may be facially neutral falls more harshly on one group than another and cannot be justified by business necessity. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Proof of discriminatory motive is not required under a disparate impact theory.

■ Neither Khalifa nor respondents provided additional evidence on this issue. Recognizing that this case is before us on a motion to dismiss on the pleadings and that the additional evidence considered by the trial court did not affect this issue, we hold that the pleadings are sufficient to state a cause of action.

## II
### *Constitutional Claims*

Khalifa next maintains that Hiniker's removal of the contract from the set-aside program and the policy of restricting set-aside contracts to a certain value is a violation of his civil rights under 42 U.S.C. § 1983. Section 1983 provides that any person, who under color of state law deprives another individual of federally protected rights, is subject to personal liability. Khalifa claims that the State's actions violated his rights to due process and equal protection.

■ This statute creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). Khalifa's claims are that he was denied equal protection of the law because he is black and that he was deprived of a property right without due process of law.

### *Due Process Right*

The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To establish a due process violation, Khalifa must establish a protectable property interest.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

The set-aside statute for disadvantaged individuals specifies percentage and distribution requirements. Substantial discretion for actual administration of the program is left to the Commissioner. The

DOA has published rules for establishing set-aside procurements which provide a procedure the procurement division must follow in awarding contracts. 2 MCAR § 1.6704, recodified as Minn.R. 1230.1800. Before the procedure is triggered, however, the requisition must first be placed on the list of set-aside contracts. Minn.R. 1230.1800, subp. 2. Once the contract has formally been set aside, the rules then mandate that an estimated price be established and that all businesses on the set-aside list be notified of the estimated price. 2 MCAR § 1.6704B.1 and 2, recodified as Minn.R. 1230.1800, subp. 2(A) and (B).

Where there is only one business in a given commodity class, that business must receive an invitation to submit a bid based upon the estimated price. 2 MCAR § 1.6704B.4, recodified as Minn.R. 1230.-1800, subp. 2(D). If the bid falls within five percent of the estimated price, the contract will be awarded to that bidder. 2 MCAR § 1.6704B.6 and 7, recodified as Minn.R. 1230.1800, subp. 2(F) and (G).

In *Cable Communications Board v. Nor-West Cable*, 356 N.W.2d 658 (Minn. 1984), the Minnesota Supreme Court considered whether a cable company had a property interest in a cable franchise contract for the City of St. Paul. The court held that the respondent had no property interest at stake because the initial franchise award from the city was conditioned upon mayoral approval and on agreement with the city on a franchise ordinance. Those conditions were never fulfilled. *Id.* at 666.

■ In this case Khalifa was notified by the set-aside program coordinator that the contract had been set aside. He visited the DOA office and discussed the bidding procedure. However, no further steps were taken under the established procedures. There is no evidence that an estimated price was set, and Khalifa never received an invitation to bid. We think it reasonable for Khalifa to *expect* the contract would be awarded to him, but this expectation is not a constitutionally protected property inter-

est. *See Vruno v. Schwarzwalder*, 600 F.2d 124, 130–32 (8th Cir.1979).

### Equal Protection

■ The United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Equal protection requires that all persons similarly situated be treated alike under the law. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982); *Matter of Harhut*, 385 N.W.2d 305, 310 (Minn.1986). Our previous discussion of Khalifa's claims under the Minnesota Human Rights Act applies to this issue. Khalifa, because he is black, is a member of a "protected" or "suspect" class, requiring the court to subject the alleged unequal application of the law to strict scrutiny. *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944).

■ We hold that there are sufficient issues of material fact to warrant trial on the issue of whether Khalifa was denied equal protection of the law under the United States Constitution.

### III

### Hiniker's Immunity

■ Under the eleventh amendment, Khalifa is barred from suing a state unless the state consents. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). An action against the DOA, as a department of the State, is similarly barred. *Bird v. State Department of Public Safety*, 375 N.W.2d 36, 43 (Minn.Ct.App.1985).

■ However, Khalifa seeks damages from James Hiniker in his individual and official capacities. Official-capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 660, 98 S.Ct. 2018, 2020, 56 L.Ed.2d 611 (1978). So long as the government entity receives notice and an

opportunity to respond, official capacity suits are, in all respects other than the name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). A damage award in an official-capacity suit is paid by the government entity. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 1114 (1985).

■■■ Thus, to the extent Khalifa requests damages against Hiniker in his official capacity, the action is barred by the eleventh amendment. Khalifa can recover against Hiniker only in his personal capacity.

■■■ An official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses such as "objectively reasonable reliance on existing law." *Kentucky v. Graham*, 105 S.Ct. at 3106; *see Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity).

Qualified immunity applies to certain official actions. The test is defined as follows:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *accord Finch v. Wemlinger*, 361 N.W.2d 865, 868 (Minn.1985) (citations omitted).

■■■ Whether Hiniker performed his discretionary functions in violation of Khalifa's clearly established rights is a question of fact. If it is found that the decision to remove the contract was racially motivated, Hiniker would not be immune from suit under 42 U.S.C. § 1983.

## IV

### *Common Law Fraud Claim*

■■■ In his fraud cause of action Khalifa claims that "[d]efendants represented [he] would receive fair treatment and equal opportunity in the administration of the set-aside programs." No specific allegations or evidence support this claim. A claim for fraud must be made with particularity. Minn.R.Civ.P. 9.02. In order to establish a prima facie case of fraud, a number of elements must be met. *Peterson v. American Family Mutual Insurance Co.*, 280 Minn. 482, 160 N.W.2d 541 (1968). The claim was not made with sufficient particularity, nor are there any facts which would support an assertion of a knowingly false representation, which is a required element of fraud. We affirm the trial court's holding that Khalifa has not stated sufficient facts to state or support an action for fraud.

## DECISION

We affirm the trial court's dismissal of appellant's claim that he was denied due process of law under 42 U.S.C. § 1983. We also affirm the trial court's dismissal of appellant's common law fraud claim. We reverse the dismissal of appellant's discrimination claims under the Minnesota Human Rights Act and the dismissal of his 42 U.S.C. § 1983 claim based on denial of equal protection of the law. We reverse the trial court's dismissal of James Hiniker in his individual capacity and remand the matter for trial.

Affirmed in part, reversed in part, and remanded.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would affirm the trial court for the following reasons:

1. The Commissioner of Administration is empowered to set-aside procurements for small businesses owned and operated by socially or economically disadvantaged persons. Minn.Stat. § 16B.19, subd. 5. Here the Commissioner never initiated set-aside procedures for the State's 1982 light bulb contract. *See id.* subd. 3. Instead, the State small business coordinator represented to Khalifa that the contract was desig-

nated for the set-aside program. Reliance on that representation was erroneous. The coordinator was not empowered to bind the Commissioner. It is within the Commissioner's discretion, and is his function, to designate set-aside procurements.

2. The Commissioner did not abuse his discretion in determining the State's 1982 light bulb contract should be awarded through competitive bidding. While Khalifa may have properly shown a presumption of discrimination, the State effectively rebutted that presumption. The State explained competitive bidding was utilized because the set-aside program would have resulted in single bidder procurement. To allow a single bidder in awarding such an extensive State contract creates unreasonable danger regarding fairness in purchase price. The procurement division's practice of setting an estimated price does not adequately protect against this danger. The Commissioner is duty-bound to fairly protect the State's interests.

3. Khalifa advanced nothing to show that the Commissioner's basis for action was a mere pretext for racial discrimination. In fact the State's 1983 light bulb contract, also awarded by competitive bidding, was presented to Khalifa.