**GEORGE D. NEWMAN & SONS, INC.**

v.

**WASHINGTON SUBURBAN SANITARY COMMISSION.**

Civ. No. S 88–2439.

United States District Court, D. Maryland.

Oct. 3, 1988.

Mark Rollinson, Smith Rollinson, Clark S. Kall, Alexandria, Va., for plaintiff.

Nathan Greenbaum, Robert H. Drummer, Vicki E. Webb, Washington Suburban Sanitary Com'n, Hyattsville, Md., for defendant.

MEMORANDUM

SMALKIN, District Judge.

This matter is before the Court on the motion of defendant to dismiss the amended complaint. Plaintiff is a disappointed bidder under a contract to haul sludge from the Blue Plains Sewage Treatment Plant operated by defendant. The plaintiff firm was the second lowest of three bidders, the contract having been awarded to

Hardy & Son Trucking, Inc. The essence of plaintiff's case is that, although both plaintiff and the Hardy firm are certified as minority business enterprises, the Hardy firm is not a *bona fide* minority business firm.

■ The first count of the complaint rests on the civil rights and federal question jurisdiction of the Court, 28 U.S.C. sections 1331, 1343, and 42 U.S.C. section 1983 (1982). Plaintiff claims that it was racially discriminatory for defendant to award the contract to "Hardy which was obviously fronting for the non-minority alleged subcontractors holding the permits and controlling Hardy...." Second Amended Complaint para. 44. Plaintiff does not dispute the fact that Hardy is qualified under Maryland law as a minority job enterprise, *viz.*, a black owned and operated business. Plaintiff disputes only the *bona fides* of the Hardy firm's minority status. That allegation utterly fails to state any claim of unlawful discrimination.

Unlawful discrimination is an act towards, or a choice between, persons based in whole or in part upon a motive to treat certain persons, in this case, racial minorities, differently from others. It is impossible to see how defendant WSSC could be guilty of any prohibited racial discrimination when both plaintiff and the successful bidder were qualified as minority business enterprises. That is, WSSC's choice between two *minority* enterprises involves no hint of prohibited, invidious discrimination. Thus, the case of *Khalifa v. State*, 397 N.W.2d 383 (Minn.App.1986), on which plaintiff relies in its opposition, is inapposite. *Khalifa* concerned a state contract designated for a minority set-aside program. After non-minority would-be bidders launched a telephone campaign, the contract was removed from the set-aside program and awarded, through competitive bidding, to a non-minority bidder. *Id.* at 385–86. Here, on the other hand, WSSC need not have sought minority bidders at all. *See* WSSC Minority Procurement Policy (submitted as part of Exhibit A to Complaint) (listing numerous methods for encouraging minority participation in con-

tracts). More importantly, in the eyes of WSSC, based upon certifications issued by other Maryland agencies, both Hardy and plaintiff *were* minority contractors. Perhaps the wisdom of the choice, or its "correctness" is called into question by plaintiff's allegations that the Hardy firm is not *bona fide*, but no question of prohibited racial discrimination, or other violation of federal civil rights, is presented.

■ Moreover, a disappointed bidder has no fourteenth amendment property interest in a government contract unless state law declares that such a right exists. *See Curtis Ambulance of Florida, Inc. v. Board of County Commissioners*, 811 F.2d 1371, 1375 (10th Cir.1987); *Kendrick v. City Council of Augusta*, 516 F.Supp. 1134, 1138 (S.D.Ga.1981). *See also Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). As defendant points out, plaintiff has cited no Maryland case or statute conferring such a right. Thus, plaintiff's first count fails to state any federal claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and it must be dismissed.

In addition, the first count is so frivolous that it fails to present a substantial federal question at all. Therefore, this Court lacks subject matter jurisdiction as to the first count. *See Davis v. Pak*, 856 F.2d 648, (4th Cir.1988). As the Fourth Circuit recently stressed, "[i]t is axiomatic that the federal courts are courts of limited jurisdiction"; courts must "guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state law claim adjudicated in the federal system." *Id.*, at 650, 651.

■ Given the lack of any merit or substance in plaintiff's first claim, the second claim cannot properly rest on pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("federal claim must have substance sufficient to confer subject matter jurisdiction on the court"); *Davis*, 856 F.2d at 651. ("If the federal claim is found insubstantial, ... the court is also without jurisdiction to decide any state issues or claims...."). Although plaintiff

alleges diversity jurisdiction under 28 U.S.C. section 1332 (1982), it is plain that, to a legal certainty, plaintiff could not recover $10,000 in monetary damages, exclusive of interest and costs. Plaintiff's state law claim is an ill-defined one for "abuse of discrimination and illegality." The only monetary damages possibly recoverable under state law are the costs of plaintiff's administrative protest, the costs of this action, and punitive damages. Assuming that the costs of the administrative protest are recoverable, it appears to the Court to a legal certainty that less than $10,000 would be involved. Of course, under section 1332, the costs of the present action are not includible in the jurisdictional amount calculus. 28 U.S.C. section 1332(b) (1982). Finally, under Maryland law, any claim for punitive damages in these circumstances is patently frivolous. *See Katz v. Washington Suburban Sanitary Commission*, 284 Md. 503, 507–09, 397 A.2d 1027, 1030–31 (1979) (WSSC is a state agency entitled to sovereign immunity); Md. State Gov't Code Ann. sections 12–104, 12–201 (1984 & Supp.1987) (no waiver of sovereign immunity for punitive damages in tort or contract actions, respectively).

Viewing the jurisdictional amount question as if only injunctive relief were sought, and measuring the value of the objective which plaintiff seeks to achieve from plaintiff's standpoint, *see Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed. 2d 383 (1977), it is likewise apparent that the jurisdictional amount is not satisfied. At the August 19, 1988 hearing before Judge Ramsey on the temporary restraining order, plaintiff made it plain that it was claiming no entitlement to the award of the contract in question, but simply was seeking a rebid. Transcript of August 19, 1988 Hearing, at 13–14. Any benefit to plaintiff from a rebid is far too speculative to satisfy the jurisdictional amount, given that it was not the low bidder on the job, given that Hardy might again be awarded the contract, and given that other bidders might come in.

In fact, WSSC documents provided by plaintiff reveal that the bids of both plaintiff and a third bidder, MTI Construction Company, were "fiscally unacceptable." In addition, plaintiff failed to submit a necessary haul permit by the deadline for bid clarifications. The WSSC staff therefore recommended that if the contract did not go to Hardy,

> [t]he contract should ... be rebid on the open market and should include a mandatory minority subcontracting requirement of 30–40%, with the WSSC of course reserving the right under its Minority Procurement Policy of awarding the contract to a minority prime contractor who submits a bid within 10% of the low bid.

Deposition of John A. Hardy, Sr., Exhibit 1, at 3 (submitted as Exhibit A to plaintiff's Amended Motion for Preliminary Injunction). Thus, even if Hardy had not been awarded the contract, WSSC would not have given the job to plaintiff. More importantly, even if Hardy were stripped of its minority contractor status, Hardy would still be eligible to bid if the contract were offered to all bidders.

Plaintiff's attempt to satisfy the jurisdictional amount by suggesting, in its opposition to this motion, that the Court might order the contract awarded directly to plaintiff is based upon cases applying federal law, rather than upon the law of Maryland. Plaintiff has pointed to nothing under Maryland law that would entitle it to an award of the contract or to anything other than another chance to bid, which certainly cannot be said to be worth $10,000.

Even persuasive federal case law has declared it inappropriate for a court to award a government contract directly to an unsuccessful bidder. The Circuit Court of Appeals for the District of Columbia, noted for its expertise in reviewing administrative decisions, stressed the discretion due an agency's decision concerning the awarding of government contracts in *Delta Data Systems Corp. v. Webster*, 744 F.2d 197 (D.C.Cir.1984) (Scalia, J.). An unsuccessful bidder on an FBI procurement contract

challenged the inclusion of certain corporate financial data in the calculations used to rank bidders. The district court ordered the FBI to award the contract to plaintiff, and the FBI appealed. In reversing the lower court's order, then-Judge Scalia declared that because of the deference due an agency's decision, "a court may not order the award of a contract unless it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Id.* at 204. *See also Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir.1970) ("It is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties."). Because it was not clear that Delta Data would have received the contract but for the FBI's allegedly improper actions, the district court exceeded its discretion in awarding the contract to Delta Data. *Delta Data,* 744 F.2d at 206. The facts here indicate that even if Hardy had not won the contract, plaintiff would not have been awarded the job. Therefore, it would be improper for this Court to consider awarding the contract directly to plaintiff.

Thus, as Judge Ramsey noted at the August 19 hearing, "if the Plaintiff wins all the way, the best that will happen in this case is a rebidding of the contract. It will not be a letting of the contract to the Plaintiff, nor is there any real likelihood of an awarding of damages. . . ." Transcript of August 19, 1988 Hearing, at 33–34. In *Delta Data,* Judge Scalia stressed the speculative value of a rebid:

> If the vindication of "rights" belonging to Delta Data were the principal object, the ideal remedy would give Delta Data its "expectation" damages—that is, place it in the economic situation it would have occupied if the FBI had not acted improperly. The problem is that we have no way of knowing what that economic situation would have been. All we know for sure is that Delta Data was deprived of an *opportunity* to obtain an award; it might not have received the award even if the FBI had acted properly.

*Delta Data,* 744 F.2d at 206 (emphasis in original). *See also Old Dominion Dairy Products, Inc. v. Secretary of Defense,* 631 F.2d 953 (D.C.Cir.1980) (finding no grounds to vacate federal agency's award of contract because it was speculative whether unsuccessful bidder would have received contract); *John C. Holland Enterprises, Inc. v. J.P. Mascaro & Sons, Inc.,* 653 F.Supp. 1242 (E.D.Va.), *aff'd,* 829 F.2d 1120 (4th Cir.1987) (diversity action in which unsuccessful bidder failed to state claim against successful bidder for state tort of unjust enrichment due to speculative nature of claim). When it is so speculative that plaintiff would have received the contract, the potential value of the contract cannot be considered in determining whether plaintiff's claim meets the jurisdictional amount.

Because the Court finds that it lacks both federal question and diversity jurisdiction over this action, it is not necessary to reach either the issue of exhaustion of administrative remedies or that of federal abstention. Nevertheless, the Court notes that it appears that plaintiff has indeed failed to exhaust the available administrative remedies. WSSC regulations provide: "Any protest concerning the *solicitation* or the Contract *award,* and any dispute concerning *performance* under this Contract. . . . shall be filed within 15 calendar days after the protestor knows or should have known of the facts giving rise thereto." WSSC General Conditions and Instructions for Bidders or Offerors, at 12 (attached to Complaint as Exhibit A) (emphasis added). There is no provision for protesting a *bid,* as plaintiff attempted to do. A court lacks jurisdiction if the plaintiff has not yet exhausted administrative remedies. *Prince George's County v. Blumberg,* 288 Md. 275, 283–84, 418 A.2d 1155, 1160–61 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); 17 C. Wright, A. Miller & C. Cooper, *Federal Practice and Procedure* section 4233, at 586 (1988).

■ Furthermore, even if the Court had jurisdiction, it would be proper, given the circumstances of this action, for the Court

to abstain from hearing this case. In the seminal case of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court determined that abstention is appropriate when federal intervention might threaten important state policies or regulatory schemes. As the Fourth Circuit has explained: "The purpose of *Burford* abstention is to prevent a federal court from interfering with a 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.' " *Browning–Ferris, Inc. v. Baltimore County*, 774 F.2d 77, 79 (4th Cir.1985) (quoting *Aluminum Company of America v. Utilities Commission of North Carolina*, 713 F.2d 1024, 1029 (4th Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984)). Here the contract in question concerns the hauling, storage, and disposal of sewage sludge, which is governed by a comprehensive statutory and regulatory scheme reflecting Maryland environmental and land use policies. *Id.* *See* Md.Envtl.Code Ann. sections 9–230 to –249 (1987). Thus, just as the Fourth Circuit in *Browning–Ferris* determined that it was appropriate for a federal district court to abstain from hearing a suit concerning a Maryland landfill contract, *Browning–Ferris*, 774 F.2d at 79–80, so it would be appropriate, if this Court had jurisdiction, to abstain from hearing this suit involving a sludge-hauling contract governed by the same state statutory scheme.

In short, the amended complaint does not present a federal case, either under the federal question jurisdiction or the diversity jurisdiction of the Court. Therefore, an order will be entered separately, dismissing count one of the complaint for failure to state a claim upon which relief can be granted, and dismissing count two for lack of federal subject matter jurisdiction.