Dennis **LEAF** and Joel Kuntz, individually and on behalf of all others similarly situated, Appellants,

v.

Michael **FREEMAN**, in his capacity as Hennepin County Attorney; et al., Respondents.

No. C4–92–2226.

Court of Appeals of Minnesota.

April 27, 1993.

Review Denied June 28, 1993.

Randall D.B. Tigue, Minneapolis, for appellants.

Michael O. Freeman, Hennepin County Atty., Michael Q. Lynch, Asst. County Atty., Minneapolis, for respondents.

Considered and decided by CRIPPEN, P.J., and DAVIES and FOLEY,* JJ.

## OPINION

DAVIES, Judge.

The district court denied appellants' motion to enjoin respondent officials from destroying, without ascertaining ownership, firearms turned in by the public under a county program of buying guns for melt-down. After the melt-down, appellants moved to compel production of documents identifying by model and serial number the weapons that had been destroyed. Instead, the district court granted respondents' motion for summary judgment. Appellants challenge summary judgment on their section 1983 claim. We reverse and remand.

## FACTS

Respondents Michael Freeman and Donald Omodt are the Hennepin County Attorney and the Hennepin County Sheriff, respectively. Seeking to curb gun-related violence, Freeman and Omodt, along with a coalition of law enforcement officials and community leaders, formulated a plan to reduce the number of guns in Hennepin County. On January 30, 1992, the county attorney's office initiated "Drop Your Guns Month." Press releases stated that any

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

person could turn in guns on a "no questions asked" basis in return for $50 per gun for up to three guns. The county would then melt them down at a local smelter. During the first week of the program, approximately 5,000 guns were collected. These guns were to be melted down on February 5, 1992.

On that day, appellants Dennis Leaf and Joel Kuntz commenced this action against respondents Freeman and Omodt, in their official capacities, seeking a temporary injunction, a permanent injunction, and attorney fees. They argued that irreparable injury in violation of the United States Constitution, the Minnesota Constitution, and Minnesota statutory law would occur because of respondents' decision to destroy the guns without ascertaining ownership and attempting to compensate the true owners or to return their property. Appellants asserted that respondents were liable for these violations pursuant to 42 U.S.C. § 1983 (1988). During the 1980s, 15 guns were stolen from Leaf and three from Kuntz. Although most of these guns had recorded serial numbers, police recovered only one of each appellant's stolen weapons.

The district court initially granted a temporary restraining order, enjoining respondents from destroying, dismantling, or disposing of the firearms. The court dissolved the temporary restraining order on February 12, however, and denied appellants' request for a temporary injunction.

Appellants appealed denial of a temporary injunction and moved this court for a stay of the district court's dissolution of the temporary restraining order, pending appeal. We denied that motion. *Leaf v. Freeman*, No. C5–92–291 (Minn.App. Feb. 25, 1992) (order op.). That appeal was later dismissed as moot once the guns were melted down.

Despite assertions by Hennepin County officials that they would honor the promise not to record serial numbers of the guns collected, the sheriff's department recorded serial numbers for some of the 5,000 firearms collected (approximately 1,700 of the first 5,000 guns had serial numbers). The collection program continued through February 27, with respondents collecting an additional 1,000 guns.

Respondents notified the court of the planned melt-down on February 28 of all 6,000 guns. Appellants moved the court for an opportunity to inspect and record the make, model, and serial number of all the guns received in the program. The trial court denied the motion as to the first 5,000 guns collected since the available serial numbers had already been recorded, but granted the motion as to the last 1,000 firearms.

Appellants then moved to compel production of any documents listing the make, model, caliber, and serial number of the 6,000 firearms. Appellants also requested class action certification and, in the alternative, to amend the complaint to name additional plaintiffs. The district court, however, granted respondents' motion for summary judgment, ruling that appellants' constitutional rights had not been violated; that in any event, respondents were entitled to qualified immunity; and that the county itself could not be held liable for section 1983 violations since service of process was insufficient to confer jurisdiction over that entity. The court further found that this court had definitively disposed of the injunctive relief issue.

On appeal, appellants only challenge summary judgment with respect to their section 1983 claim.

## ISSUES

I. Is appellants' official-capacity suit under 42 U.S.C. § 1983 (1988) sufficient to impose municipal liability on Hennepin County?

II. Are respondents entitled to qualified immunity?

III. Are appellants entitled to reasonable attorney fees under Minn.Stat. § 549.21 (1992)?

## ANALYSIS

On appeal from summary judgment, this court must determine whether genuine issues of material fact exist and whether

the trial court erred in its application of the law. *State by Cooper v. Hennepin County*, 441 N.W.2d 106, 109 (Minn.1989); *see also* Minn.R.Civ.P. 56.03.

## I. Municipal Liability

■ Local governing bodies can be sued directly under 42 U.S.C. § 1983 (1988) for monetary, declaratory, or injunctive relief. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 701, 98 S.Ct. 2018, 2035, 2041, 56 L.Ed.2d 611 (1978) (overruling *Monroe v. Pape*, 365 U.S. 167, 187–92, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961)). In *Monell*, the Court further acknowledged that

> official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.

*Id.* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. And in *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985), the Court again commented on local government liability where that entity has not been sued directly:

> In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond. We now make that point explicit.

(Footnote omitted.) *See also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

Minnesota follows that method. *See Khalifa v. State*, 397 N.W.2d 383, 389–90 (Minn.App.1986) ("So long as the government entity receives notice and an opportunity to respond, official capacity suits are, in all respects other than the name, to be treated as a suit against the entity.") (citing *Brandon*, 469 U.S. at 471–72, 105 S.Ct. at 878). We, therefore, find baseless respondents' assertion that Hennepin County

must be named expressly in the section 1983 suit.

■ Similarly, the district court's conclusion that appellants' section 1983 suit fails to reach Hennepin County because of lack of proper service is without foundation. Courts have generally concluded that a complaint, in order to constitute adequate notice to a government entity, need only notify the official and the relevant public employer that the suit is an official-capacity suit and not a suit against the official in an individual capacity. *See Kolar v. County of Sangamon*, 756 F.2d 564, 566 n. 2, 568 (7th Cir.1985); *Pennington v. Hobson*, 719 F.Supp. 760, 773 (S.D.Ind.1989).

Here, the complaint named the respondents only in their official capacities. In addition, Hennepin County, through the county attorney's office, represented respondents throughout the proceedings. We believe, therefore, that Hennepin County received adequate notice of potential liability in an official-capacity suit and that it had an opportunity to respond, though it has not done so in its own name.[1]

At oral argument, respondents argued that the rule excusing service of process directly on a municipality in official-capacity suits only applies to cases brought in federal court. Respondents claim that the Minnesota Rules of Civil Procedure require service of process on public corporations and that Minn.Stat. § 373.08 (1992) requires the county to be named in the caption. Respondents cited no cases in support of this argument and admitted that Minnesota courts have not specifically addressed the issue.

We find no reason to deviate from the procedure outlined in *Brandon* and *Graham* just because an official-capacity suit under section 1983 is brought in a Minnesota court, rather than in a federal court. We conclude, therefore, that to hold a government entity liable in a section 1983 official-capacity suit brought in a Minnesota

---

1. Respondents rely on *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 69–71 n. 10, 109 S.Ct. 2304, 2311–12 n. 10, 105 L.Ed.2d 45 (1989), in asserting that, because appellants in the first instance sought only injunctive relief, there was

a lack of notice. Their reliance is misplaced. In *Will*, the Supreme Court's distinction between injunctive relief and damages in an official-capacity suit pertains only to cases involving the doctrine of sovereign immunity. *See id.*

district court, the government employer need neither be named in the caption nor served with process, so long as it has notice and an opportunity to respond.

## II. Immigration

■ Appellants also contend that the district court erroneously found that respondents were entitled to qualified immunity. Case law clearly holds, however, that if appellants have established an official-capacity suit, neither the local government nor the officials named in the suit is entitled to a dismissal based on a qualified immunity defense. In *Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105–06, the Supreme Court distinguished the defenses available to officials sued in their individual capacities from those available to them when sued in their official capacities:

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. *See [Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity)]. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

(Citations and footnote omitted.) Thus, the district court erroneously granted summary judgment based on respondents' qualified immunity.

Of course, only Hennepin County, not respondent officials, may be held liable for any damages awarded. *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105.

## III. Attorney Fees

■ Appellants, arguing that respondents' defense was clearly frivolous and asserted in bad faith, claim that the district court erroneously denied them reasonable attorney fees under Minn.Stat. § 549.21 (1992) and Minn.R.Civ.P. 11.

Although we believe the law is clear, neither *Brandon* nor *Graham* has heretofore been applied in Minnesota. Moreover, the facts and procedural history of this case are fairly complex. Consequently, we uphold the district court's denial of appellants' request for attorney fees.

## DECISION

We hold that the district court erred in granting summary judgment in favor of respondents on the basis of qualified immunity because that defense is unavailable to officials in an official-capacity suit. The court also erred in ruling that Hennepin County could not be held liable because of lack of service, although it received notice and had an opportunity to respond. We affirm denial of appellants' motion for attorney fees.

**Reversed and remanded.**