**E. Phillip DUDERWICZ and Diana Duderwicz, Plaintiffs-Appellants,**

v.

**SWEETWATER SAVINGS ASSOCIATION, Defendant-Appellee.**

**Ronald RADER and Zhanna Rader, Plaintiffs-Appellants,**

v.

**SWEETWATER SAVINGS ASSOCIATION, Defendant-Appellee.**

Nos. 77–1481, 77–1592.

United States Court of Appeals, Fifth Circuit.

May 22, 1979.

E. Phil Duderwicz, pro se, and for plaintiffs-appellants in No. 77–1592.

John E. James, Tommy Day Wilcox, Jr., Macon, Ga., for defendant-appellee.

Gary L. Pleger, B. Andrew Prince, Athens, Ga., for plaintiffs-appellants in No. 77–1592.

Before GOLDBERG, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Appellants, borrowers, brought separate diversity actions against a lender. They sought, *inter alia*, forfeiture of interest charged under a note allegedly usurious under Georgia law. The district court dismissed the appellants' respective actions, now consolidated on this appeal, "on account of mootness". We reverse and remand.

## I. STATEMENT OF FACTS

On May 9, 1974, appellants executed notes and deeds to secure debts owed to The Georgia Loan & Trust Company ("Georgia Loan"). The notes and accompanying deeds were assigned on or about September 17, 1974, to Sweetwater Savings Association ("Sweetwater"), defendant-appellee. After the assignment Georgia Loan became Sweetwater's trustee and servicing agent for the subject loans.

Under the terms of the deeds securing appellants' respective debts the lender had the option to require the borrower to pay lender, in monthly installments, one-twelfth of the annual taxes, assessments, and premiums for mortgage and hazard insurance on the property purchased with the loan proceeds. Such escrowed funds would be disbursed to satisfy these obligations when due. Alternatively, lender could exercise its option by having the borrower make payments directly to the payee, promptly furnishing lender receipts evidencing payments.

Initially appellants were required to make payments to the lender. These funds, under the terms of the deed, were required to be deposited in an institution the accounts of which were insured or guaranteed by a federal or state agency. In the absence of a written agreement to the contrary, lender was not required to pay borrower interest on these escrowed funds. No such written agreement was entered.

The funds paid by appellants were deposited by Georgia Loan in a non-interest bearing escrow account in the First National Bank & Trust Company of Macon, Georgia. The Annual Statement of Account Sheets, itemizing the exact amounts received and disbursed from these escrow accounts, reflect that escrowed funds were used to pay city, state, and county taxes as well as hazard insurance premiums.

On May 19, 1976, appellants initiated separate suits against Sweetwater, seeking to invoke the district court's diversity jurisdiction under 28 U.S.C. § 1332 (1976); they alleged the requisite diversity of citizenship and jurisdictional amount in controversy.[1] Under Georgia law, appellants claimed, Sweetwater had reserved, charged, and taken interest in excess of that allowed by law, thereby rendering the note usurious. *See* Ga.Code Ann. §§ 57–101, 57–101.1.[2] Appel-

1. In No. 77–1481 the alleged amount in controversy was $44,750.40; in No. 77–1591, it was $50,510.26. These amounts represented the total interest charged and/or to be charged under the terms of the subject loans. *See* Part II *infra*.

2. At the time the notes were executed the relevant Georgia usury laws read as follows:

The legal rate of interest shall be seven per centum per annum, where the rate per centum is not named in the contract, and any higher rate must be specified in writing, but in no event shall any person, company, or corporation reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than nine per

lants also alleged that because the notes were usurious Georgia law required Sweetwater to forfeit the amount of interest charged or to be charged. *See* Ga.Code Ann. § 57–112.[3] As a result of this forfeiture appellants also claimed entitlement to recovery of interest already paid under their respective notes.

Appellants' legal theory seemed to be that the escrow account required by the lender under the terms of the deed securing the debt was a "contract", "contrivance", or "device" bringing the effective rate of interest on the loan above the nine percent ceiling. The note called for the then maximum nine percent rate of interest. Appellants readily admit that they brought their suits after reading an article which suggested that an escrow arrangement such as that present in the case at bar could raise the effective rate of interest on a loan above that permitted by law. *See The Real Estate Escrow Account—Recent Trends Toward Reform,* 10 Ga.St.B.J. 618, 634–38 (1974).

Appellee Sweetwater answered the complaints, asserting, *inter alia,* that they failed to state claims upon which relief could be granted,[4] and that the requisite jurisdiction-

---

centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever.

Ga.Code Ann. § 57–101.

The maximum legal rate of interest on real estate loans, such as those in the instant case, was governed by a separate Georgia Code provision.

(a) Notwithstanding any other provisions of this Code, Title, or any other Acts to the contrary, the maximum rate of interest of eight per cent. per annum shall not be applicable and the legal maximum rate shall be nine per cent. per annum in transactions where the security given for any loan, charge, reserve, advance of money, or forbearance to enforce collection of money, is or includes real property or an interest therein: Provided, however, that the rate of interest for a loan, the repayment of which is guaranteed by the Veterans Administration pursuant to the provisions of Public Law 85–857 (72 Stat. 1203), or insured by the Federal Housing Administration pursuant to the provisions of Subchapter II of Chapter 13 of Title 12 of the United States Code Annotated, may exceed nine per cent. per annum: and Provided, further, that amounts paid to, or contracted to be paid to, the lender by persons other than the borrower shall not be considered interest and shall not be taken into account in the calculation of interest.

(b) For the purpose of this Title, it is declared to be the intent of the legislature and the existing law of Georgia that the rate of interest shall be computed upon the assumption that the debt will be paid according to the agreed terms and will not be paid before the end of the agreed term. Any sums of money reserved or taken for the loan or forbearance which are in the nature of and taken into account in the calculation of interest, even though paid at one time, shall be spread over the stated term of the loan for the purpose of determining the rate of interest under this Code section.

(c) The foregoing subsection shall apply to all loan transactions and renewals and extensions of prior loan transactions entered into after the effective date of this section [February 26, 1969].

(d) Nothing contained in this section shall be construed to amend, modify, supersede or repeal any Act, Code section, or any other law which presently allows any person, company or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per cent. per annum, including, but not limited to, the Georgia Industrial Loan Act (Chapter 25–3); or section 57–118, relating to interest rates on loans by certain corporations; or Chapter 57–2, relating to charges and interest on secondary security deeds; or section 57–116, relating to interest on installment loans.

(e) Intangible recording taxes paid by the borrower on long-term real estate loans shall not be considered interest and shall not be taken into account in the calculation of interest.

Ga.Code Ann. § 57–101.1.

3. Ga.Code Ann. § 57–112 provides:

Any person, company, or corporation violating the provisions of section 57–101, shall *forfeit the entire interest charged* or taken, *or contracted to be* reserved, *charged* or taken. No further penalty or forfeiture shall be occasioned, suffered or allowed. (Emphasis added).

4. There is no question but that Sweetwater timely raised the defense that appellants failed to state claims upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6), (h). Although not addressed by the district court in the order from which this appeal was taken, Sweetwater has asserted that defense on this appeal. Because the district court dismissed appellants' actions "on account of mootness", and did not reach the merits of their claims, we

al amount in controversy was not present. Dismissal of both actions was sought on these bases. Subsequently the parties moved for summary judgment. Before the district court ruled on any of these motions Sweetwater, through its servicing agent Georgia Loan, notified appellants that the escrow arrangement for payment of taxes and insurance premiums was being terminated; Sweetwater exercised its option to have the borrowers make payments directly to the appropriate taxing authorities and insurers.[5] Immediately thereafter Sweetwater filed amended motions to dismiss, alleging that termination of the escrow account arrangement extinguished any case or controversy that might have existed. The district court, in response to these motions, entered the following order: "On account of mootness each of the subject civil actions is hereby dismissed". This appeal is taken from the order of dismissal.[6]

## II. SUBJECT MATTER JURISDICTION

Sweetwater maintains that the district court could not exercise diversity jurisdiction because the requisite amount in controversy is not present.[7] We reject this contention and hold that there is a sufficient amount in controversy to invoke diversity jurisdiction under 28 U.S.C. § 1332 (1976).[8]

Dismissal of a diversity action for want of jurisdiction is justified only where it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Burns v. Anderson,* 502 F.2d 970 (5th Cir. 1974). The determination of whether the requisite amount in controversy exists is a federal question; however, "State law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce". *Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.,* 417 F.2d 129, 131 (5th Cir. 1969).

Sweetwater maintains that under the Georgia usury statute the amount in controversy is limited to the money judgment recoverable by appellants if the transactions were found to be usurious. That amount, Sweetwater argues, is approximately four thousand dollars in each case— the interest already paid by appellants on their respective notes. Sweetwater relies upon *Family Home Services, Inc. v. Taylor,* 142 Ga.App. 386, 236 S.E.2d 28 (1977) as

will not consider this point, it being beyond the scope of our review as limited by the notice of appeal. In light of our disposition of this appeal, see Parts II and III *infra,* we leave that issue for the district court's consideration on remand.

5. The identical letters received by appellants read as follows:

This is to advise that as of January 1, 1977, it will no longer be necessary for you to maintain an escrow account regarding the above captioned loan. In the near future you will receive a complete statement regarding the balance in the escrow account along with a refund check for any excess. Of course, you will be responsible for payment of the 1977 property taxes and we will advise the homeowner's insurance carrier to bill you direct. As of the first day of February, 1977, we will expect payment in the amount of principal and interest to be forwarded to us.

6. Because we reverse and remand on the ground that the cause was not moot and that the district court had subject matter jurisdiction, we do not reach the parties' respective contentions concerning the parties' or the dis-

trict court's adherence to local rules of procedure.

7. Although the district court did not rule on Sweetwater's motion to dismiss for lack of subject matter jurisdiction, we necessarily consider this question because it affects the jurisdiction of this Court. *Cf. McNutt v. General Motors Acceptance Corp. of Indiana, Inc.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936) (federal district courts are authorized to inquire at any time as to whether the conditions to exercise jurisdiction have been met); Fed.R.Civ.P. 12(h) (the court shall dismiss the action *whenever* it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter).

8. 28 U.S.C. § 1332 provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

(1) citizens of different States . . .

well as the applicable provisions of the Georgia usury code.

In *Family Home Services* a borrower attempted to recover allegedly usurious interest paid to the lender. The defendant-lender appealed the trial court's judgment for the borrower, contending that the judgment entered included interest on which the statute of limitations had run. The Georgia statute of limitations applicable to a claim to recover usurious interest is Ga.Code Ann. § 57–115 which provides: "No plea or suit for the *recovery of such forfeiture* shall be barred by lapse of time shorter than one year." (Emphasis added). The forfeiture referred to is that provided for in Ga.Code Ann. § 57–112: "Any person, company, or corporation violating the provisions of section 57–101, shall *forfeit the entire interest* so charged or taken, or *contracted to be* reserved, *charged* or taken. No further penalty or forfeiture shall be occasioned, suffered or allowed." (Emphasis added).

The defendant in *Family Home Services* conceded that the judgment entered by the trial court was limited to the amount paid by the borrower during the twelve months immediately preceding the filing of the suit. The contention on appeal was that only a portion of the amount paid during the preceding twelve months was allocable to interest, the remainder being repayment of principal not recoverable under sections 57–112 and 57–115. In rejecting this conten-

tion the court held that "all money shown to have been paid in excess of the principal amount of the loan *and* not barred by the statute of limitation is *recoverable.*" 236 S.E.2d at 29 (emphasis added, citation omitted). This holding does not mean that the amount in controversy in the instant case is the interest *recoverable* in the form of a money judgment by appellants.

> Under the law, *all interest is forfeited on an usurious loan,* and the payments thereon go in reduction of the principal, and any payments made after the principal is paid off can be *recovered,* if paid within twelve months next before filing a suit therefor.

*Hartsfield Co. v. Watkins,* 67 Ga.App. 411, 20 S.E.2d 440, 442 (1942). *See also* Ga.Code Ann. § 57–113 ("The amount forfeited as aforesaid may be pleaded as a set-off in any action for the recovery of the principal sum loaned or advanced, by the defendant in said action.")

■ Under Ga.Code Ann. § 57–112, a lender forfeits usurious interest "contracted to be reserved, charged or taken." Georgia courts construing this provision have recognized that interest contracted for but not yet paid is subject to forfeiture. *See generally Citizens & Southern South DeKalb Bank v. Watkins,* 236 Ga. 759, 225 S.E.2d 266 (1976); *Childs v. Liberty Loan Corp.,* 144 Ga.App. 715, 242 S.E.2d 354 (1978).[9]

---

9. In *Childs* the trial court held a debtor liable for prepaid finance fees *charged, but not paid,* in accordance with Ga.Code Ann. § 25–315(b). On appeal the debtor asserted that this portion of the judgment was erroneous because the forfeiture provision of section 57–112 included this component of the finance charge as interest. The Georgia Court of Appeals agreed, holding that the trial court erred in not excluding these fees from the award. The ratio decidendi of *Childs* is that a lender forfeits usurious interest contracted for but not yet paid under section 57–112.

The same conclusion was implied in *Citizens & Southern.* There the Supreme Court of Georgia held that the trial court erred in enjoining a lender from foreclosing on deeds securing allegedly usurious notes because the borrower had not tendered the principal amount of the indebtedness. In attaining this result the court said:

> The note in the present case was subject to the interest limitation of Code Ann. § 57–101.1. A violation of that statute would cause a forfeiture of the entire interest *charged* as provided by the general forfeiture statute. Code § 57–112.
> Since the interest only is subject to forfeiture, the principal amount of the indebtedness must be tendered before equity will intervene to prevent the foreclosure sale.

225 S.E.2d at 268 (citations omitted, emphasis added).

Not only did the court observe that usurious interest *charged*—in contrast to usurious interest paid or taken—was subject to forfeiture, but it also held that only the principal owed need be tendered for the borrower to obtain an injunction. The court did not find that interest as yet unpaid had to be tendered, thereby implying that such unpaid but contracted for usurious interest was forfeited under section 57–112.

██ Appellants each sought, in their respective actions, forfeiture of interest contracted to be charged under the allegedly usurious notes. The amounts claimed to be subject to forfeiture are far in excess of the jurisdictional amount. *See* note 1 *supra.* The only question remaining is whether the pecuniary consequence of this forfeiture may be considered as part of the value of the matter in controversy. We hold that it may be.

██ This Court has held that where an insurer seeks to cancel insurance policies it has written, the value of the matter in controversy is the face value of the policy. *Mutual Benefit Health & Accident Association v. Fortenberry,* 98 F.2d 570 (5th Cir. 1938); *New York Life Insurance Co. v. Swift,* 38 F.2d 175 (5th Cir. 1930). These cases seem to support the proposition that the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but by the judgment's pecuniary consequence to those involved in the litigation. *See Thomson v. Gaskill,* 315 U.S. 442, 447, 62 S.Ct. 673, 675–76, 86 L.Ed. 951 (1942) ("In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation."); *Beacon Construction Co. v. Matco Electric Co.,* 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation."). *See generally* 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3710, at 496–503 (1976).

In the case at bar the pecuniary consequence of a finding that the transactions are tainted with usury would be forfeiture of all interest charged or contracted to be charged under the notes. These amounts being in excess of $10,000, the district court had subject matter jurisdiction.

## III. MOOTNESS

██ The district court dismissed appellants' diversity actions "on account of mootness", rather than finding that their complaints failed to state claims upon which relief could be granted. We read the district court's order as finding that although there *might* have been claims upon which relief could have been granted, Sweetwater's unilateral termination of the escrow account aspect of the transactions made those claims moot. Throughout our analysis, therefore, we assume without deciding that appellants stated claims upon which relief might have been granted. This assumption dictates the question to be considered: whether an allegedly usurious loan transaction can be purged of its usurious taint through unilateral action undertaken by the lender extracting usurious interest. Applying Georgia law in this diversity case we answer this question in the negative.

██ There are four elements of a usurious transaction under Georgia law: (1) a loan or forebearance of money, either express or implied; (2) upon an understanding that the principal shall or may be returned; and that (3) for such loan or forebearance a greater profit than is authorized by law shall be paid; and (4) that the contract was made with an intent to violate the law. *Bank of Lumpkin v. Farmers' State Bank,* 161 Ga. 801, 132 S.E. 221, 225 (1926). The element of intent may be implied if all the other elements are expressed upon the face of the contract. *Id.*[10] *But the taint of usury does not result from the payment of usurious interest, but from the agreement to do so, whether performed or unperformed. Burns v. Equitable Building &*

---

**10.** Sweetwater asserts on this appeal that appellants failed to state claims upon which relief could be granted because it is impossible to conclude that the lender had any intent to enter a usurious transaction. This position is premised upon Georgia cases holding that there is no usurious transaction if the lender's intent is to take only a slight and trifling excess interest over the legal rate. *See Cook v. Young,* 225 Ga. 26, 165 S.E.2d 727 (1969). As noted previously, we do not reach this question, leaving it for the consideration of the district court on remand. *See* note 4 *supra.*

*Loan Association,* 108 Ga. 181, 33 S.E. 856, 857 (1899); *Martin v. Johnson,* 84 Ga. 481, 10 S.E. 1092, 1093 (1890); *Holt v. Rickett,* 143 Ga.App. 337, 238 S.E.2d 706, 708 (1977). It is a violation of Ga.Code Ann. § 57–101 to reserve and take usurious interest, or to *contract* to reserve and take usurious interest. *Newcomb v. Niskey's Lake, Inc.,* 190 Ga. 565, 10 S.E.2d 51, 52–53 (1940); Ga. Code Ann. § 57–112. *In order to purge a contract of usury the contract must be wholly abandoned or cancelled, and a new obligation undertaken containing no part of the usury. Winecoff v. Atlantic Title & Trust Co.,* 184 Ga. 488, 192 S.E. 29, 33 (1937), *citing Bolton v. Union Banking Co.,* 41 Ga.App. 206, 152 S.E. 587 (1930). Having assumed above that the transaction might have been usurious, we query whether Sweetwater removed or purged the usurious taint through its unilateral actions.

In *Bolton* the plaintiff sued to recover interest paid under an allegedly usurious note. The plaintiff-borrower, whose brother had become indebted on promissory notes, took a transfer to himself of the brother's notes and, together with the brother, executed to the defendant a new note for the brother's indebtedness. This second transaction was in settlement of a suit against plaintiff and his brother in which a conveyance of real estate to plaintiff from his brother was attacked for fraud. The new notes executed by plaintiff and his brother included the principal and interest which his brother had contracted to pay defendant. The settlement transaction also involved the conveyance of real estate to defendant as security for the new note. The court found that "the contract thus entered into between the plaintiff and the defendant constituted a new and original undertaking, and the alleged usury in the first contract, paid from the proceeds of the sale of the real estate mentioned and sued for in this action, was not recoverable. The [trial] court therefore properly directed a verdict for the defendant." 152 S.E. at 587.

Sweetwater's actions in the case sub judice stand in sharp contrast to the situation in *Bolton.* Rather than *settling* a dispute with appellants, Sweetwater *unilaterally* terminated the escrow arrangement; rather than having both lender and borrowers execute a *new* contract, Sweetwater merely chose to exercise its option under the deed securing the allegedly usurious note to modify one facet of the *existing* transaction. If the transaction was usurious, a question upon which we express no opinion, Sweetwater's actions did not purge the usurious taint. Hence the district court erred in dismissing the appellants' actions "on account of mootness".[11]

REVERSED and REMANDED.

---

11. Even if the effect of Sweetwater's termination of the escrow account arrangement was to deprive appellants of claims for forfeiture of interest "to be paid" in the future, their actions still would not be moot. Assuming, as indicated above, that the transactions might have been usurious at the time the suits were filed, appellants would seem to have causes of action for recovery of interest paid in the twelve months preceding initiation of suit. *Family Home Services v. Taylor,* 142 Ga.App. 386, 236 S.E.2d 28 (1977); Ga.Code Ann. §§ 57–112, 57–115. The continued existence of this damage claim is more than sufficient to preclude dismissal "on account of mootness". *See, e. g., Johnson v. American Credit Co.,* 581 F.2d 526, 530 (5th Cir. 1978) (class representative's personal damage claim for prejudgment attachment of automobile not moot; return of automobile simply signals end of period of deprivation). *See generally* 13 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3533, at 272 (1975) (judicial action clearly has sufficient impact to avoid a mootness conclusion if there is a viable claim for damages).

The district court would still have subject matter jurisdiction even, as posited above, if the effect of Sweetwater's unilateral action was to deprive appellants of claims for forfeiture of future interest. "Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction". *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938).