United States Court of Appeals,

Eleventh Circuit.

No. 95-6766.

ERICSSON GE MOBILE COMMUNICATIONS, INC., a Delaware Corporation, Plaintiff-Appellee,

v.

MOTOROLA COMMUNICATIONS & ELECTRONICS, INC., an Illinois corporation, Birmingham, City of, a municipal corporation, Richard Arrington, Jr., in his official capacity as Mayor of the City of Birmingham, Defendants-Appellants.

Aug. 22, 1997.

Appeals from the United States District Court for the Northern District of Alabama. (No. CV-94-AR-808-S), William M. Acker, Jr., Judge.

Before ANDERSON, Circuit Judge, and FAY and KRAVITCH, Senior Circuit Judges.

KRAVITCH, Senior Circuit Judge:

Ericsson GE Communications ("EGE") brought this diversity action pursuant to the Alabama Competitive Bid Law, Ala.Code §§ 41-16-50, *et seq.* (1991 & Supp.1996), to enjoin the execution of a contract between Motorola Communications & Electronics, Inc. ("Motorola") and the City of Birmingham (the "City") for the purchase of a new public safety communications system. Because we conclude that the value of an injunction voiding the contract between Motorola and the City, from the perspective of plaintiff-appellee EGE, is too speculative to satisfy the amount in controversy requirement of the diversity statute, 28 U.S.C. § 1332, we remand the case to the district court with instructions to dismiss for lack of subject matter jurisdiction.

I.

This action arises out of the City's purchase of an 800 MHZ trunked simulcast radio communication system for its police and fire departments.[1] In the early 1990's, the Mayor of Birmingham decided that the City needed a new public safety communications system and hired a consultant to research the City's needs and to assist the City in preparing bid specifications and in

---

[1] We recite only those facts necessary for the resolution of the jurisdictional issue, which generally depends on the facts as alleged in the plaintiff's complaint. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 287, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

evaluating competing bids. In May 1993, the City issued a Request for Bids ("RFB") for two different communication technology systems, the APCO 16 and the APCO 25.[2] The RFB provided that a vendor could submit bids for either or both of these technology systems. Only EGE and Motorola submitted bids in response to the City's request; EGE bid on the APCO 16 system for $9,758,053 and Motorola bid on the APCO 25 system for $11,336,282. After the submission of bids, the Mayor concluded that the APCO 25 system technology would better serve the City's needs. The City then rejected the bids of both EGE and Motorola, and negotiated a new contract with Motorola.

Alleging among other things that the consultant hired by the City was biased in favor of Motorola and that he skewed the decision-making process in that company's favor, EGE brought this action to enjoin the enforcement of the contract between Motorola and the City and to have itself declared the lowest responsible bidder. Motorola and the City moved unsuccessfully to dismiss EGE's claim for lack of subject matter jurisdiction. After certification to the Alabama Supreme Court,[3] the district court conducted a trial before an advisory jury. Adopting that jury's verdict, the district court concluded that the City's decision to purchase the APCO 25 technology was the result of improper influence exerted by Motorola on the City's decision makers and, therefore, violated the

---

[2]The APCO 16 and APCO 25 are sets of specifications for public radio systems. The APCO 25, a newer technology, is based on specific technological requirements for the equipment while the APCO 16 is based on functional standards.

[3]In *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.,* the Alabama Supreme Court held that the City's use of alternative bidding did not, by itself, violate the competitive bid law. 657 So.2d 857, 865 (Ala.1995). It further concluded that EGE could prove a violation of the bid law by demonstrating that the City's selection of the APCO 25 system was based on " "ignorance through lack of inquiry,' or was "the result of improper influence,' or was otherwise arbitrary and capricious." *Id.* (quoting *White v. McDonald Ford Tractor Co.,* 287 Ala. 77, 248 So.2d 121, 129 (1971)).

competitive bid law. Accordingly, the district court voided the contract.[4] Motorola and the City appeal this judgment, as well as the district court's order denying their motion to dismiss.

## II.

As a threshold matter, we must determine whether this action properly was brought in federal court. EGE alleged jurisdiction under the diversity statute, 28 U.S.C. § 1332, which, at the time this action was filed, provided for federal subject matter jurisdiction over actions between citizens of different states[5] in which the matter in controversy exceeds $50,000.[6] Because EGE sought only declaratory and injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 345, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977); *see also Occidental Chemical Corp. v. Bullard,* 995 F.2d 1046, 1047 (11th Cir.1993).

### A. Governing Perspective

Whether courts, in determining the amount in controversy, are to measure the value of the object of the litigation solely from the plaintiff's perspective or whether they may also consider the value of the object from the defendant's perspective is considerably less well-established. The

---

[4]In a subsequent order, the district court articulated an additional alternative ground for finding a violation of the Alabama Competitive Bid Law. The district court concluded that the Mayor had violated § 6.09 of the Mayor-Council Act of 1955 by negotiating a contract directly with Motorola after having rejected the bids of both EGE and Motorola and without first having readvertised for the bids.

[5]It is undisputed that this diversity of citizenship requirement is satisfied.

[6]Since the filing of this action, the amount in controversy requirement has been raised to $75,000. *See* 110 Stat. 3847, 3849 (1996).

Supreme Court has provided no clear guidance on this question,[7] and, as a result, federal courts are divided as to the proper perspective to use in determining the amount in controversy.[8]

Moreover, district courts in this circuit, reading our prior cases to conflict, have expressed uncertainty as to whether the plaintiff-viewpoint rule governs in this circuit or whether courts are free to consider the value of the object of the litigation to either party.[9] After carefully reviewing this circuit's precedents, however, we find no conflict, and we conclude that this court's predecessor purposefully and conspicuously adopted the plaintiff-viewpoint rule.[10]

In our view, several cases from the former Fifth Circuit establish the plaintiff-viewpoint rule. In *Vraney v. County of Pinellas,* a non-resident property owner and taxpayer brought a diversity action to enjoin a county waterworks program. 250 F.2d 617 (5th Cir.1958) (per curiam). Even

---

[7]Various Supreme Court opinions have been cited by courts and the parties in this case in support of both the plaintiff-viewpoint and either-viewpoint rules. *See, e.g., Snyder v. Harris,* 394 U.S. 332, 337-38, 89 S.Ct. 1053, 1058-59, 22 L.Ed.2d 319 (1969) (prohibiting aggregation of claims of plaintiffs in class actions); *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.,* 239 U.S. 121, 124, 36 S.Ct. 30, 32, 60 L.Ed. 174 (1915) ("The district court erred in testing the jurisdiction by amount that it would cost defendant to [comply with injunction]."); *Smith v. Adams,* 130 U.S. 167, 174, 9 S.Ct. 566, 569, 32 L.Ed. 895 (1889) (amount in controversy judged by "pecuniary result to one of the parties immediately from the judgment"); *Market Co. v. Hoffman,* 101 U.S. 112, 25 L.Ed. 782 (1879)(referring to right claimed by the defendant in determining amount in controversy). As far as we are aware, however, the Court never has expressly embraced either position in a case in which the value differed depending on the perspective from which it was measured. Therefore, we do not read any of its apparently conflicting opinions to have resolved this issue. *See* 14A Charles A. Wright *et al., Federal Practice and Procedure,* § 3703 at 63-66 (1985) (concluding that Supreme Court cases are inconclusive).

[8]*Compare Kheel v. Port N.Y. Auth.,* 457 F.2d 46, 48-49 (2d Cir.), *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972) (adopting plaintiff viewpoint rule) and *Massachusetts St. Pharm. Ass'n v. Federal Prescrip. Serv., Inc.,* 431 F.2d 130, 132 (8th Cir.1970)(same) *with Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores, Inc.,* 605 F.2d 1155, 1160 (10th Cir.1979) (adopting either-viewpoint rule) and *McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 395 (7th Cir.1979) (same). It appears that the majority of federal courts have chosen to use the plaintiff-viewpoint rule. *See* 15 James W. Moore, *Moore's Federal Practice,* § 102.109[3] at 198 (1997).

[9]*See, e.g., Shelly v. Southern Bell Tel. & Tel. Co., Inc.,* 873 F.Supp. 613, 617 (M.D.Ala.1995); *Bassett v. Toyota Motor Credit Corp.,* 818 F.Supp. 1462, 1466 (S.D.Ala.1993); *Mutual First, Inc. v. O'Charleys of Gulfport, Inc.,* 721 F.Supp. 281, 283 (S.D.Ala.1989).

[10]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ), we adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

4

though the complaint clearly alleged that the value of the waterworks program to the defendant county exceeded the amount in controversy, the court dismissed the action for lack of jurisdiction because "there is no averment showing or tending to show that the *value to the plaintiff* of the object or right sought to be enforced exceeds the sum or value" required by the diversity statute. *Id.* at 618 (emphasis added). The court reiterated that "[u]nder the decisions in taxpayers' actions, as well as others, the *value of the plaintiff's right* sought to be enforced must exceed the jurisdictional amount in order to confer federal jurisdiction." *Id.* (emphasis added).

In *Alfonso v. Hillsborough County Aviation Authority,* 308 F.2d 724 (5th Cir.1962), this circuit's predecessor again refused to consider the value of the object of the litigation from the defendant's perspective in determining the amount in controversy. In *Alfonso,* a group of homeowners brought a class action against the county aviation authority seeking to enjoin expansion of the county's airport. Citing *Vraney,* the *Alfonso* court stated that "[t]he *value to the plaintiff* of the right to be enforced or protected determines the amount in controversy" and concluded that the alleged damage to the homes of the individual plaintiffs was insufficient to satisfy the amount in controversy requirement. 308 F.2d at 726-27 (emphasis added). The court expressly rejected the plaintiffs' contention that "the amount in controversy is the value of the air rights to the defendants." *Id.; see also Texas Acorn v. Texas Area 5 Health Systems Agency, Inc.,* 559 F.2d 1019, 1023 (5th Cir.1977) ("Surely a plaintiff cannot satisfy the jurisdictional amount any time a private defendant's annual budget exceeds [the requisite amount in controversy].").[11]

In our view, these cases firmly establish that this circuit has adopted the plaintiff-viewpoint rule. Commentators and other courts likewise have read these cases as endorsing the plaintiff-viewpoint approach. *See, e.g., McCarty v. Amoco Pipeline Co.,* 595 F.2d 389, 392 n. 3 (7th

---

[11]*Advance Tank and Const. Co., Inc. v. Arab Water Works,* 910 F.2d 761, 763 (11th Cir.1990), on which appellee relies, provides no guidance on this question. Although the court in *Advance Tank* exercised jurisdiction over a claim for injunctive relief under the Alabama Competitive Bid Law, the plaintiff in that case also brought a claim for monetary damages under 42 U.S.C. § 1983, which provided an independent basis for federal jurisdiction. In noting jurisdiction, we specifically referred to the fact that the district court had assumed jurisdiction under both §§ 1331 and 1332. *Id.* at 763 n. 4.

Cir.1979) (citing *Alfonso*); 14A Charles A. Wright *et al., Federal Practice and Procedure,* § 3703 at 61 n. 1 (citing *Alfonso* and *Vraney* ).[12] Moreover, the Fifth Circuit recently indicated that the plaintiff-viewpoint rule of *Vraney* and *Alfonso* is still controlling. *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 257 n. 1 (5th Cir.1996) (stating that because value to plaintiff and defendant was the same, calculation of amount in controversy did not violate plaintiff-viewpoint rule of *Alfonso*).

We do not read *Duderwicz v. Sweetwater Sav. Ass'n,* 595 F.2d 1008 (5th Cir.1979), on which appellee relies, to disturb or undermine the holdings of the cases discussed above. In *Duderwicz,* plaintiffs sought to recover interest charged or to be charged by defendant pursuant to allegedly usurious notes. The court first determined that interest contracted for but not yet paid was properly subject to forfeiture under Georgia law. 595 F.2d at 1013. Having made this determination, the only question left for the court to resolve was whether "the pecuniary consequence of this forfeiture may be considered as part of the value of the matter in controversy." *Id.* at 1014. The *Duderwicz* court held that such a pecuniary consequence provided a proper basis for calculating the amount in controversy.

In reaching this conclusion, the *Duderwicz* court stated that "[d]ismissal of a diversity action for want of jurisdiction is justified only where it appears to a legal certainty that *plaintiff* cannot recover the jurisdictional amount." 595 F.2d at 1012 (emphasis added). It further noted that state law is relevant to define "the nature and extent of the right *plaintiff* seeks to enforce." *Id.* (emphasis added). This language indicates to us that *Duderwicz* understood and applied the governing plaintiff-viewpoint rule.

---

[12]Some courts have suggested that the plaintiff-viewpoint rule is required only in class actions, and, in non-class actions, courts are free to evaluate the amount in controversy from either party's perspective. *See, e.g., Indianer v. Franklin Life Ins. Co.,* 113 F.R.D. 595, 603-04 (S.D.Fla.1986). We find nothing in our precedents, however, to justify such a limitation on the plaintiff-viewpoint rule in this circuit. *Vraney* involved a *single* plaintiff, and although *Alfonso* involved a class action, it relied on *Vraney* and other non-class action cases in rejecting valuation from the defendant's viewpoint. Moreover, we find nothing in the language of either of these opinions to suggest that they intended such a narrow plaintiff-viewpoint rule. *Cf. Webb v. Investacorp, Inc.,* 89 F.3d 252, 257 n. 1 (5th Cir.1996) (applying *Alfonso* in non-class setting).

Appellee nevertheless relies on the following language from *Duderwicz:* "[T]he value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but by the pecuniary consequence to those involved in the litigation." *Id.* at 1014. We do not read this language to be inconsistent with the plaintiff-viewpoint rule. Rather, the *Duderwicz* court simply recognized that the plaintiff's claim for monetary *damages* need not, by itself, exceed the requisite statutory amount because the immediate financial consequences of the litigation to the plaintiff—in that case, the financial benefit of not having to pay the interest contracted to be charged—may also be considered in calculating the amount in controversy.[13] We therefore do not read *Duderwicz* to have altered the law of this circuit.[14]

Although we recognize that there are persuasive arguments to support the adoption of the either-viewpoint rule,[15] as a panel of this court, we remain bound to follow the plaintiff-viewpoint rule regardless of the wisdom we may attach to it. Only an *en banc* decision of this court or an intervening decision of the Supreme Court can alter the controlling law of this circuit.

*B. Value of the Object of the Litigation*

---

[13]As in many cases, the perspective used to determine the amount in controversy was immaterial in *Duderwicz* because the value of the object of the litigation was the same whether measured from the plaintiff's or the defendant's perspective. *See also Webb,* 89 F.3d at 257 n. 1. We therefore decline to accord great weight to the *Duderwicz* court's reference to "those involved in the litigation."

[14]We recognize that some district courts have read *Duderwicz* to signal this circuit's abandonment of the plaintiff-viewpoint rule. *See Indianer v. Franklin Life Ins. Co.,* 113 F.R.D. 595, 604 n. 8 (S.D.Fla.1986) (concluding that *Duderwicz* indicates that this circuit has "clearly moved away from" the plaintiff-viewpoint rule); *State of Louisiana v. Fedders Corp.,* 539 F.Supp. 582, 585 (M.D.La.1982) (concluding that *Duderwicz* may represent "a change of opinion in this Circuit away from *Alfonso* "). We think that these courts, however, have misinterpreted the reasoning and import of *Duderwicz.*

[15]*See* 14A Charles A. Wright *et al., Federal Practice and Procedure,* § 3703 at 66-68 (1985) ("[The either-viewpoint rule] seems to be the desirable rule, since the purpose of a jurisdictional amount requirement—to keep trivial cases away from the court—is satisfied when the case is worth a large sum to either party."); 15 James W. Moore, *Moore's Federal Practice,* § 102.109[4] at 199 (1997) ("[T]he jurisdictional-amount requirement reflects a congressional judgment that federal judicial resources should be devoted only to those diversity cases in which the financial stakes rise to a predetermined level. It is difficult to understand why those financial stakes are not implicated when *either* party stands to gain or lose the statutorily determined amount or its equivalent.").

Having determined that the plaintiff-viewpoint rule governs, we now consider whether EGE has alleged an amount in controversy sufficient to satisfy the diversity statute. We first must determine the remedies available to EGE under Alabama law, and then consider the monetary value of the available relief.

The Alabama Competitive Bid Law provides that certain municipal expenditures such as the purchase of a public safety communications system "shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder." Ala.Code § 41-16-50(a). It further states that "[a]ny taxpayer of the area within the jurisdiction of the awarding authority and any bona fide unsuccessful bidder on a particular contract shall be empowered to bring a civil action in the appropriate court to enjoin execution of any contract entered into in violation of the provisions of this article." Ala.Code § 41-16-61; *see also* Ala.Code § 41-16-51(d) ("Contracts entered into in violation of this article shall be void....").

Although EGE originally sought a declaration that it was the lowest responsible bidder (and thus entitled to the contract with the City), the district court refused to grant such relief.[16] More importantly, we find no basis in Alabama law for such an award. Rather, under Alabama law, the sole remedy available to EGE in an action challenging a contract under the competitive bid law is an injunction voiding the contract between Motorola and the City. *See Crest Const. Corp. v. Shelby County Bd. of Educ.,* 612 So.2d 425, 432 (Ala.1992) (holding that bid preparation expenses are not recoverable under this section); *City of Montgomery v. Brendle Fire Equipment, Inc.,* 291 Ala. 216, 279 So.2d 480, 484 (1973) (holding that bid law does not provide basis to enjoin future contracts). "The courts cannot direct the authorities as to how they shall exercise [their] discretionary power, nor to whom they must let a contract, but may only enjoin them from doing so illegally...." *Townsend v. McCall,* 262 Ala. 554, 80 So.2d 262, 265 (1955).

---

[16]The district court concluded that "in the present posture of the pleadings [EGE] cannot obtain either monetary relief or a mandatory injunction ordering the City to award the contract to it." (R1-15:2).

Simply put, the Alabama Competitive Bid Law, which was designed to benefit the public, "creates no enforceable rights in the bidders." *Crest,* 612 So.2d at 432. "There is no indication in this statute [ ] that an unsuccessful bidder has any right or expectancy to insist upon the award of a contract. To the contrary, the statute is carefully crafted to limit the remedy "to enjoin[ing] execution of any contract entered into in violation of the provisions of this article.'" *Jenkins, Weber & Assocs. v. Hewitt,* 565 So.2d 616, 617 (Ala.1990) (interpreting identical language of another portion of the Alabama Competitive Bid Law, § 41-16-31) (quoting *Urban Sanitation Corp. v. City of Pell City,* 662 F.Supp. 1041, 1044 (N.D.Ala.1986)).[17]

Based on these cases, it appears to a legal certainty that EGE can obtain only an injunction voiding the contract entered into by the City and Motorola. We must now determine whether the value of this injunctive relief to EGE is sufficiently measurable and certain to satisfy the $50,000 amount in controversy requirement of the diversity statute. EGE points to no authority to suggest that, in the event of an injunction, the City would be required to rebid the project. Moreover, in the event that the City did decide to rebid the contract, it appears that the City would be free to submit an alternative bid proposal for both the APCO 16 and APCO 25 systems, and absent improper influence, would be free to conclude again that the APCO 25 technology is best suited for serving its needs. *Ericsson,* 657 So.2d at 865-67. It is important to remember that on rebid, as always, the City's "determination of the lowest responsible bidder and its formation of bid specifications may be exercised with a wide margin of discretion." *Id.* at 861.

Any benefit that EGE could receive from the injunctive relief awardable by the district court—namely, the chance to rebid for the contract—is, in our view, too speculative and immeasurable to satisfy the amount in controversy requirement. *See Newman & Sons, Inc. v. Washington Suburban Sanitary Comm'n,* 696 F.Supp. 160, 162 (D.Md.1988) (concluding that benefit from a rebid is too speculative to satisfy the jurisdictional amount), *aff'd,* 873 F.2d 1438 (4th

---

[17]The Alabama Supreme Court has determined that the Alabama legislature intended §§ 41-16-31 & 41-16-61 to have the same meaning. *Crest,* 612 So.2d at 432.

Cir.), *cert. denied,* 493 U.S. 854, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989). Because EGE cannot reduce the speculative benefit resulting from a rebid "to a monetary standard, [ ] there is no pecuniary amount in controversy." *See Texas Acorn v. Texas Area 5 Health Systems Agency, Inc.,* 559 F.2d 1019, 1023-24 (5th Cir.1977).[18] We therefore hold that EGE has failed to satisfy the $50,000 amount in controversy requirement of 28 U.S.C. § 1332.

### III.

Accordingly, the district court's order is REVERSED, and this case is REMANDED with instructions to dismiss for lack of subject matter jurisdiction.

---

[18]EGE has made no efforts in its pleadings or briefs to place a monetary value on its right to rebid. In its complaint, EGE merely stated that amount in controversy exceeded $50,000.