### Angela GONZALEZ

v.

### FAIRGALE PROPERTIES COMPANY, N.V., et al.

### No. CIV. CCB–02–CV357.

United States District Court,
D. Maryland.

Dec. 11, 2002.

Curtis C. Coon, Law Office of Curtis C Coon LLC, Towson, MD, for Plaintiff.

R. Stewart Barroll, Cookeerly and Barroll LLC, Chestertown, MD, James Manly Parks Duane Morris LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now pending before the Court are motions to dismiss by Defendants, Herman E. Hill, Jr. and C. Breckenridge Debnam. Specifically, Hill and Debnam move to dismiss the complaint for failure to comply with the requirements of Fed.R.Civ.P. 23.1 and for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). The motions have been fully briefed and oral argument was held on August 2, 2002. For the reasons that follow, the Court will grant the Defendants' motions.

## I.

This case arises out of a challenge to the enforceability of a contract for sale of land between Defendant, Fairgale Properties Company, N.V. ("Fairgale"), and two buyers, Hill and Debnam, the latter a former Fairgale vice-president. Plaintiff, Angela Gonzalez, a stockholder of approximately 36 % of Fairgale's outstanding stock, contends that Fairgale was not authorized to sell its land to Hill and Debnam because the sale was not the subject of a stockholders' meeting and was not voted upon by the stockholders.

Fairgale is a family-owned corporation. Angela's father, Guillermo Gonzalez, is the president of Fairgale. Angela's brother, Andreas Gonzalez, is the secretary/treasurer of Fairgale and owns approximately 48.5 % of Fairgale's outstanding stock. Angela's mother, Clemencia Gonzalez, owns the remaining 15.5 % of Fairgale's outstanding stock.[1]

Fairgale's assets are comprised entirely, or at least substantially, of two parcels of land. (*Id.* ¶¶ 7–9, 17.) The first parcel is 250.59 acres known as Lot I on Parcel 135 on the Kent County tax map number 26. (*Id.* ¶ 7.) The second parcel is approximately 57 acres described as a portion of Lot 30 of Parcel 123 on the Kent County tax map number 26. (*Id.* ¶ 8.)

On November 20, 2001, Andreas Gonzalez, on behalf of Fairgale, executed a document entitled "Contract of Sale" with Hill. (*Id.* ¶ 10.) On December 7, 2001, Guillermo Gonzalez, on behalf of Fairgale, executed a document entitled "Agreement" with Hill and Debnam. (*Id.* ¶ 11.) In the "Contract of Sale" and the "Agreement," Fairgale agreed to sell Lot I and its part of Lot 30 to Hill and Debnam. (*Id.* ¶ 12.) According to the "Contract of Sale," the consideration for the real estate is $1,100,000.00. (*Id.* ¶ 13.)

■ The sale of the two parcels of land by Fairgale was allegedly not the subject of a stockholders' meeting and was not voted upon by Fairgale's stockholders. Thus, Angela Gonzalez argues that the sale is not an authorized act of Fairgale

---

**1.** These stock ownership percentages were provided by counsel at oral argument.

and asks the court to issue a declaratory judgment stating that the "Contract of Sale" and "Agreement" are unenforceable instruments. (*Id.* ¶ 17.)[2]

In an alternative claim, Gonzalez argues that the owner of the remaining portion of Lot 30 is Clemencia Gonzalez, by virtue of a deed dated June 24, 1999. (*Id.* ¶ 14.) Clemencia Gonzalez' home is located on Lot 30. Until April 2001, Clemencia Gonzalez' home, and the acreage surrounding it, constituted all of Lot 30. In April 2001, an amendment was made to the lot line, consolidating Clemencia Gonzalez' property with Fairgale's 57 acres. No deed was recorded acknowledging the joinder of these two parcels of land. (*Id.*) Based on these circumstances, Angela Gonzalez argues in her complaint that Fairgale cannot give good and merchantable title without the consent of Clemencia Gonzalez and that Hill and Debnam should, therefore, be refunded all monies in accordance with the "Contract of Sale." (*Id.* ¶ 15, 18.)

## II.

### A.

As an initial matter, it must be noted that Gonzalez conceded during oral argument that she would voluntarily dismiss or, in the alternative, amend her complaint in order to remove her second claim relating to Clemencia Gonzalez's lack of consent to the sale. In order to completely discuss the complaint, however, the court will briefly address the merits of that claim.

■ Angela Gonzalez must meet the requirements of both Maryland law and federal law in order to establish standing for this diversity claim. *See Wolfe v. Gilmour Mfg. Co.,* 143 F.3d 1122, 1126 (8th Cir. 1998) (*citing Metropolitan Exp. Services, Inc. v. City of Kansas City, Mo.,* 23 F.3d 1367, 1369 (8th Cir.1994)). If Angela Gonzalez is attempting to assert the legal rights of Clemencia Gonzalez, she would not have standing because, generally, a plaintiff can only assert her own legal rights and cannot rest her claim on the legal rights or interests of third parties. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also United Food and Commercial Workers v. Brown Group,* 517 U.S. 544, 557, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). Angela Gonzalez has presented no evidence that an exception to this general rule applies.

■ Alternatively, Gonzalez may be asserting her claim as a shareholder of Fairgale. The shareholder standing rule is "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Franchise Tax Bd. v. Alcan Aluminium Ltd.,* 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990). An exception to this rule "allow[s] a shareholder with a direct, personal inter-

---

**2.** During oral argument, Gonzalez specified that the statutory basis for her suit is 8 Del. C. § 271, which provides that "[e]very corporation may ... sell ... all or substantially all of its property and assets ... when and as authorized by a resolution adopted by the holders of a majority of the outstanding stock of the corporation entitled to vote thereon...." The standard for determining whether shareholder approval is required under § 271 is "whether a transaction 'is out of the ordinary

and substantially affects the existence and purpose of the corporation.'" *Thorpe v. CERBCO, Inc.,* 676 A.2d 436, 444 (Del.1996) (*citing Oberly v. Kirby,* 592 A.2d 445, 464 (Del.1991)). Although Gonzalez fails to cite any statute, Delaware law, or the corporation's bylaws in her complaint, the complaint passes the minimal standard set forth in Fed. R.Civ.P. 8(a). *See Ostrzenski v. Seigel,* 177 F.3d 245, 251 (4th Cir.1999).

est in a cause of action to bring suit even if the corporation's rights are also implicated." *Id.* Gonzalez has presented no evidence that in her role as a shareholder, she has a direct, personal interest in whether good and merchantable title was conveyed to Hill and Debnam and, therefore, she does not have shareholder standing.

Finally, if Gonzalez were bringing this claim as a derivative suit, she has failed to comply with the requirements of Fed. R.Civ.P. 23.1. Accordingly, Angela Gonzalez's alternative claim regarding the lack of consent of Clemencia Gonzalez will be dismissed.

### B.

■■■ Hill's first argument [3] is that the claim set forth in paragraphs 15–18 of the complaint must be dismissed because it is a shareholder derivative suit that fails to comply with the requirements of Fed. R.Civ.P. 23.1. In order to determine whether the suit is a derivative or an individual action, the court must determine if Angela Gonzalez suffered a direct or "special" injury. *See In re Tri–Star Pictures, Inc., Litig.,* 634 A.2d 319, 330 (Del. 1993) (*citing Lipton v. News Int'l, Plc.,* 514 A.2d 1075, 1078 (Del.1986)); *see also Moran v. Household Int'l, Inc.,* 490 A.2d 1059, 1070 (Del.Ch.1985), *aff'd,* 500 A.2d 1346 (Del.1985).[4] If she did suffer a "special" injury, Gonzalez's suit will be considered an individual suit and she need not comply with the requirements of Rule 23.1. "A special injury is established where there is a wrong suffered by plaintiff that was not

suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote." *Id.* In determining the nature of the injury, the Court must look to "the 'nature of the wrong alleged' and the relief, if any, which could result if plaintiff were to prevail." *Kramer v. Western Pac. Indus., Inc.,* 546 A.2d 348, 352 (Del.1988) (*quoting Elster v. American Airlines, Inc.,* 100 A.2d 219, 221–23 (Del.Ch.1953)). Additionally, "a court must look to 'the body of the complaint, not to the Plaintiff's designation or stated intention.'" *Id.* (*quoting Lipton,* 514 A.2d at 1078).

Gonzalez's claim in this case is that she was deprived of her right to vote on the sale of land to Hill and Debnam. Because this suit involves the contractual nature of Gonzalez's right to vote, it is a suit that can be brought individually. *See In re Gaylord Container Corp. Shareholders Litig.,* 747 A.2d 71, 79 (Del.Ch.1999); *see also Lipton,* 514 A.2d at 1078 (stating that a plaintiff establishes an individual action where he alleges a "wrong involving a contractual right of a shareholder, such as the right to vote, ..., which exists independently of any right of the corporation"). Thus, Gonzalez was not required to comply with Fed.R.Civ.P. 23.1 when she initiated the suit.

### C.

■■■ Hill's next argument is that Gonzalez's complaint must be dismissed for lack of subject matter jurisdiction. Although Gonzalez based her request for a

---

**3.** Debnam simply joins in Hill's motion.

**4.** This court must apply Maryland choice-of-law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Fairgale was incorporated under the laws of the Dutch Antilles and reincorporated in Delaware. (*See* Compl. ¶ 2.) Since the claim involving Fairgale's fail-

ure to hold a stockholders' meeting or conduct a vote on the sale of land involves the internal affairs of Fairgale, Delaware law applies. *See N.A.A.C.P. v. Golding,* 342 Md. 663, 679 A.2d 554, 559 (1996) (*citing Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982)).

declaratory judgment on the Federal Declaratory Judgment Act ("FDJA"), the FDJA does not confer jurisdiction upon the federal courts. A district court must have independent subject matter jurisdiction over the action, either diversity of citizenship or federal question. *Aetna Cas. & Surety Co. v. Quarles,* 92 F.2d 321, 323–24 (4th Cir.1937). It is undisputed that there is no federal question jurisdiction. Therefore, there must be diversity jurisdiction.

▮▮▮▮▮ Hill argues that Gonzalez has not satisfied the "amount-in-controversy" requirement.[5] The burden of establishing diversity jurisdiction rests with the party seeking to litigate in federal court, in this case, Gonzalez. *See Gwyn v. Wal–Mart Stores, Inc.,* 955 F.Supp. 44, 45 (M.D.N.C. 1996) (*citing McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *see also, e.g., Spielman v. Genzyme Corp.,* 251 F.3d 1, 5 (1st Cir.2001); *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir.1998); 15 *Moore's Federal Practice* § 102.107(1) (3d ed.2002). Gonzalez must, therefore, establish that it does not appear to a legal certainty that the claim for relief is less than $75,000. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938);15 *Moore's Federal Practice* §§ 102.106(1), 102.107(1) (3d ed.2002). Gonzalez is unable to meet this burden.

▮▮▮▮ When a plaintiff seeks declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm.,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Gonzalez argues that the object of the litigation is the two parcels of land. Since "[t]he stated consideration of the real estate according to the 'Contract of Sale' is the sum of $1,100,000.00," (*see* Compl ¶ 13), Gonzalez asserts that the amount in controversy requirement is satisfied. The object of the litigation, however, is not the land, but Gonzalez's right to vote. In other words, Gonzalez is not seeking to receive the parcels of land; instead, she is seeking to vote on the sale of those parcels. Thus, the issue that must be determined is how to value Gonzalez's right to vote.

▮▮▮▮ The Fourth Circuit appears to apply the "either-viewpoint" rule in determining the value of the object of the litigation. *See Government Emp. Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964); *see also Candor Hosiery Mills, Inc. v. Int'l Networking Group, Inc.,* 35 F.Supp.2d 476, 479 (M.D.N.C.1998); *cf. Hoffman v. Vulcan Materials Co.,* 19 F.Supp.2d 475, 481 (M.D.N.C.1998) (discussing the "pecuniary consequences" to either side in the litigation). Under the "either-party" rule, the amount-in-controversy requirement is satisfied if either the gain to the plaintiff or the cost to the defendant is greater than $75,000. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 609 (7th Cir.1997); *Oklahoma Retail Grocers Assoc. v. Wal–Mart Stores, Inc.,* 605 F.2d 1155, 1159 (10th Cir.1979).

Gonzalez has provided no evidence that she will receive a pecuniary gain if the

---

5. Hill also contends that there is not complete diversity of the parties. This argument, however, is premised upon the belief that this is a derivative suit and that Fairgale should, therefore, be realigned as a plaintiff. Since the court has determined that this is an individual suit, the parties should not be realigned. Both parties concede that Defendant Fairgale is a resident of Maryland for jurisdictional purposes. Complete diversity therefore exists because Defendants Hill and Debnam are both residents of Maryland, (*see* Compl. ¶ 3), while Angela Gonzalez is a resident of Virginia.

requested relief is granted. Instead, she would simply receive the opportunity to vote on the sale of the land. Further, although the sale of the land may be halted if Angela Gonzalez is given the right to vote, there is no evidence that Fairgale or Hill and Debnam will suffer a pecuniary loss.[6]

If the declaratory relief sought is granted, any pecuniary loss to Fairgale or Hill and Debnam is "too speculative and immeasurable to satisfy the amount in controversy requirement." *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.,* 120 F.3d 216, 221–22 (11th Cir.1997) First, it remains possible that the Fairgale shareholders would authorize the sale of the parcel of lands since it is unclear how Clemencia Gonzalez would vote in the transaction. Under those circumstances, the defendants would clearly suffer no pecuniary loss. Second, even assuming that the Fairgale shareholders vote against the sale of the parcels of land, it is speculative to conclude that the defendants would suffer a pecuniary loss. Although Hill and Debnam could bring suit against Fairgale for breach of contract, there is no evidence that Hill and Debnam would be entitled to monetary damages exceeding $75,000.[7]

The facts of this case are analogous to those in *Ericsson.* In *Ericsson,* a dispute

arose after Ericsson and Motorola placed bids to provide communication technology systems to the city of Birmingham, Alabama. The city rejected both bids and simply negotiated a new contract with Motorola. Ericsson brought suit seeking to enjoin the enforcement of that contract and to have its bid, which was lower than Motorola's bid, recognized. *Id.* at 218. The Eleventh Circuit determined that the amount-in-controversy requirement had not been met.[8] Because the sole remedy available to Ericsson under Alabama law was invalidation of the contract between Motorola and the city of Birmingham, the Court concluded that any benefit that Ericsson could receive from the injunctive relief was "too speculative and immeasurable to satisfy the amount in controversy requirement," in part because the city would not be required to rebid the contract or to accept Ericsson's bid if there was a rebid. *Id.* at 221–22; *see also George D. Newman & Sons, Inc. v. Washington Suburban Sanitary Comm'n,* 696 F.Supp. 160, 162 (D.Md.1988) (concluding that benefit from rebid is too speculative to satisfy the jurisdictional amount), *aff'd,* 873 F.2d 1438, 1989 WL 37377 (4th Cir.1989).

Thus, based on the allegations in the complaint, if the declaratory relief sought is issued, both Fairgale and Hill and Debnam will simply retain assets worth $1,100,000 and there will be no measurable

---

6. For example, no party has suggested that the land should be valued at more or less than $1,100,000 or that Debnam and Hill had plans to develop the land for profit. In either case, one of the defendants could suffer a pecuniary loss of greater than $75,000.

7. In fact, Hill and Debnam did bring suit against Fairgale in Circuit Court for Kent County, Maryland after Fairgale failed to appear at settlement and deliver the conveyance. (*See* Kent County Complaint, Hill Ex. B.) In his complaint, Hill seeks specific performance as a remedy and no monetary damages other than attorneys' fees and costs.

This further supports the view that any potential pecuniary loss to Fairgale is speculative and immeasurable.

8. The Eleventh Circuit followed a "plaintiff-viewpoint" rule, under which the court looks "only to the benefit to be gained by the plaintiff in order to find the amount in controversy." *Hoffman v. Vulcan Materials Co.,* 19 F.Supp.2d 475, 479–80 (M.D.N.C.1998). If applied in this case, the plaintiff-viewpoint rule would be less favorable to Gonzalez because the court would not even consider the potential pecuniary loss to the defendants.

or predictable pecuniary gain or loss to any party. Accordingly, the amount-in-controversy requirement has not been satisfied and the motions to dismiss will be granted.

A separate order follows.

*ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Defendants' motions to dismiss are **Granted;**

2. This case is **CLOSED;** and

3. Copies of this Order and the accompanying Memorandum shall be sent to counsel of record.